92 So.2d 291 (1957)
H. G. WILLIAMS MOTOR COMPANY, Plaintiff-Appellant,
v.
Luther M. ZEAGLER, Defendant-Appellee.
No. 8597.
Court of Appeal of Louisiana, Second Circuit.
January 7, 1957.
A. D. Flowers, Jena, for appellant.
J. M. Henagan, Jena, for appellee.
HARDY, Judge.
This is a suit by plaintiff, H. G. Williams, d/b/a H. G. Williams Motor Company, for the recovery of the balance due on two chattel mortgage notes representing the credit portions of the purchase price of two automobile trucks and for the enforcement of plaintiff's lien and privilege. Defendant denied liability for the balance due on the notes on the ground that title to the trucks had never been furnished in accordance with the provisions of LSA-R.S. 32:705, and defendant further prayed for the recovery of all amounts paid upon the notes. After trial there was judgment in favor of defendant rejecting plaintiff's demands for a money judgment and for recognition of the asserted lien and privilege. There was further judgment rescinding the sales and ordering the parties litigant placed in status quo by the surrender of *292 the trucks by defendant to plaintiff "fully assembled as of the time of the sale" and by awarding the amounts paid by defendant to plaintiff as compensation for defendant's use of the trucks. From this judgment plaintiff has appealed.
On September 14, 1953, plaintiff sold a Dodge truck to defendant, Luther M. Zeagler, who executed a promissory note for the unpaid portion of the purchase price in the principal sum of $1,750.14, payable in eighteen monthly installments of $97.23 each, beginning October 14, 1953. On October 2, 1953, plaintiff sold a 1950 model Chevrolet truck to the defendant, who executed his promissory note for the unpaid portion of the purchase price in the principal sum of $420, payable in twelve monthly installments of $35 each, beginning November 2, 1953.
In addition to the claims on the notes plaintiff sued on an open account in the sum of $48.90, which amount, however, appears to have been paid by defendant prior to trial, and plaintiff's demand to this extent was remitted.
In this suit plaintiff seeks to recover an alleged unpaid balance on the first note in the sum of $1,125.91, with 8% interest from April 24, 1953, until paid, together with 25% on the entire sum, principal and interest, as attorney's fees, in accordance with the terms of the note. On the second note plaintiff claims the principal sum of $390 as the unpaid balance, together with interest at 8% from date of April 24, 1954, until paid, and 25% of the total sum, principal and interest, as attorney's fees, also in accordance with the provisions of the note.
During trial of the case plaintiff acknowledged certain credits of payments totaling $160.23, which additional amount was remitted. These credits had the effect of reducing the total principal sum of plaintiff's claims on both notes to the principal amount of $1,355.68, with interest and attorney's fees.
In addition to the credits in favor of defendant, as recognized by plaintiff, or as subsequently conceded by the acceptance and remittiturs above noted, defendant claimed additional payments represented by three specific items, namely a sum of $99 allegedly paid January 6, 1953, the sum of $100 in cash allegedly paid September 28, 1953, and a total credit of $575 alleged to be due for lumber, materials and labor furnished for the account of plaintiff. Of these enumerated items the record fails to disclose any evidence as to the alleged payment of January 6, 1953, which, accordingly, should not be considered. The testimony of plaintiff and his wife on trial of the case serves to establish the cash payment of $100 made September 28, 1953, and, in our opinion, this amount should be allowed. As to the item of $575 for materials and labor, plaintiff admitted this account to the extent of $225, which amount was included in the credits allowed defendant on his obligations. The record is devoid of any testimony which would serve to establish defendant's claim to the balance of $350, making up the alleged claim of $575 under this item.
The result of these computations serves to reduce the total principal amount of plaintiff's claims to the sum of $1,255.68.
As above noted, defendant asserts that he was never furnished titles to the vehicles purchased, as required by LSA-R.S. 32:705. The correctness of this contention is overwhelmingly established by the evidence. It appears that the Dodge truck was repossessed by plaintiff in 1953, and, for some reason which is not made clear, plaintiff was unable to procure recognition of its title and registration thereof until sometime in April, 1954. Unquestionably, during the period intervening between his purchase and the actual registration of title in plaintiff's name, defendant had made numerous demands for title to the vehicle, but in vain. It is also established that during this period defendant was unable to operate the vehicle on the roads of the State Highway system. However, defendant *293 used the truck during this entire period in the course of his logging operations in the woods, and we think the evidence preponderates as to the fact that the truck, during this period, had been so roughly used and had deteriorated to such an extent that it had become practically worthless insofar as any benefit could be reasonably derived by plaintiff in the event of its surrender. We point this out particularly in view of the provision in the judgment of the lower court which required the restoration of the status quo. We think it is definitely proven that such restoration could not possibly be accomplished.
As to the purchase of the Chevrolet truck, it is contended by plaintiff that this vehicle was purchased by defendant solely for use as a trailer and for the benefit of such used parts as might be obtained therefrom, and without any intention of operating the truck. At the time of the purchase the vehicle was unfit for operation, and was actually removed by defendant from plaintiff's premises by being towed. A number of essential parts of this vehicle were either missing or beyond repair, notably the radiator, starter, battery and generator. It is our opinion that defendant has completely failed to establish his claim that he intended to use and operate this truck. On the contrary, no doubt remains in our minds as to the fact that it was purchased for the benefit of its parts and for possible use as a trailer, without any intention or purpose of restoring it to operating condition. Under these facts the issue of title with respect to this vehicle is irrelevant.
Proceeding to a consideration of the defense which is asserted on the basis of the legal proposition that LSA-R.S. 32:705 requires delivery of certificate of title, we think this issue has been heretofore disposed adversely to defendant's contention in a number of cases; Transportation Equipment Co. v. Dabdoub, La.App., 69 So. 2d 640, certiorari denied; Bedsole v. Lee, La.App., 78 So.2d 434; Hamner v. Domingue, La.App., 82 So.2d 105, certiorari denied.
In the cases cited the principle of law is correctly enunciated to the effect that the statutory provisions of the Certificate of Title Law, as set forth in LSA-R.S. 32:705 et seq., particularly in Sections 705 and 706, do not render the sale of a motor vehicle void by reason of a transfer which is not executed in conformity with the statutory requirements, but simply causes the title to be imperfect and unmarketable.
As a corollary of the above proposition the cases serve as authority for the conclusion that title to motor vehicles, although imperfect, is subject to transfer in accordance with the provisions of LSA-Civil Code Article 2456, as between the parties, even in the absence of compliance with the Certificate of Title Statute.
We are in accord with the above stated principles of law which appear to have been first declared in the opinion of our brethren of the Orleans Court in the Dabdoub case, cited supra [69 So.2d 643], as follows:
"The foregoing provisions of the statute clearly do not make the sale of a motor vehicle void if the transfer is not executed in conformity with the statute, but simply causes the title to be imperfect until the certificate is acquired. The registration of sales of motor vehicles is an administrative proceeding which does not bear any essential relation to the contract of sale entered into between the parties. However, liability may be incurred under its penal provisions for noncompliance with the statute. In other words, the statute does not directly or by implication repeal the provisions of LSA-Civil Code Article 2456, referred to hereinabove, hence title to motor vehicles, although imperfect, may still be transferred in accordance with the provisions of LSA-Civil Code Article 2456 as between the parties, *294 even though the purchaser has not complied with the Certificate of Title law." (Emphasis supplied.)
However, we wish to make it clear that we are not prepared to accept, without qualification, that portion of the above noted extract which we have emphasized. We question the correctness of the designation of motor vehicle registration in all cases as a purely administrative procedure, and we strenuously doubt the conclusion that such registration bears no essential relation to the contract of sale. In the instant case, if the facts justified a finding that defendant had been completely denied the use of an automotive vehicle because of the failure of his vendor to procure a valid certificate of title, we think the relation of this failure to the contract of sale between the parties would be essential, substantial and deserving of relief.
It follows, however, from our appreciation of the facts of the instant case that although defendant may have been caused some inconvenience and restriction of use of the vehicle through failure of plaintiff to procure a valid title certificate, he did not permit this inconvenience and limitation to deprive him of continuous, hard and, it must be concluded, beneficial use of the vehicle in connection with his logging operations. In view of this circumstance defendant is not entitled to the relief asserted.
While we approve the motive of the district judge in the instant case, which unquestionably actuated him in ordering the restoration of the status quo, we reiterate the indisputable factual conclusion that such restoration could not be accomplished. We do not find that any tender of the surrender of the vehicles to the plaintiff was ever made by defendant at a time when such an act might have been effective. We have heretofore considered a somewhat analogous situation in Sprowl v. Foshee, La.App., 86 A.2d 638, 641, in which we made the following pronouncement:
"Surely, he [the plaintiff vendee who sued for return of the purchase price], should not have retained and used the truck and also obtained return of the full sum paid for it. It was incumbent upon plaintiff at or before demanding the purchase price to deliver the truck back into the hands of defendant, or at least he must have made a bona fide attempt to do so."
For the reasons assigned it follows that the judgment from which appealed must be, and, accordingly, it is, annulled, set aside and reversed.
There is now judgment in favor of plaintiff in the full sum of $1,255.68, with interest thereon at the rate of 8% per annum from date of April 24, 1954, until paid, together with 25% of said sum, principal and interest, as attorney's fees, and all costs.
There is further judgment recognizing plaintiff's vendor's lien and privilege on the automotive vehicles described as follows:
 1Dodge Truck HHA 152, Serial
 Number 82584787A, Motor
 Number T3166416, and
 1Chevrolet Truck, Serial
 Number 2 RUG2292, Motor
 Number GEA230616, Model
 1950.
It is ordered that plaintiff's vendor's lien and chattel mortgage on the vehicles described be enforced by seizure and sale of the said trucks in accordance with law and that out of the proceeds of said sale plaintiff be paid an amount not exceeding the sum set forth above by preference and priority over all other persons whomsoever.