195 So.2d 685 (1967)
Ethel LUKE et al., Plaintiffs-Appellants,
v.
John THERIOT, Jr., et al., Defendants-Appellees.
No. 6907.
Court of Appeal of Louisiana, First Circuit.
February 6, 1967.
Rehearing Denied March 13, 1967.
*686 Cleveland J. Marcel, Daniel C. Wiemann, Frank W. Wurzlow, Jr., of Ellender, Wright & Wurzlow, Houma, for appellants.
Donald Hammett, of Hammett, Leake & Hammett, New Orleans, for appellees.
Before LANDRY, ELLIS and BAILES, JJ.
BAILES, Judge.
This action was instituted by plaintiffs, Ethel Luke, and her husband, Lawrence Luke, to recover damages for physical injuries received by Mrs. Ethel Luke in an *687 automobile collision, and to recover medical expenses incurred by the husband in the treatment of Mrs. Luke's injuries. The defendants are John Theriot, Jr., Donald Munson and Lumbermens Mutual Casualty Company.
Consolidated for the purposes of trial was the companion case of Gertie Hebert, et al versus these same defendants, on the docket of this court, our opinion being reported in 195 So.2d 691, wherein the plaintiffs seek to recover damages for physical injuries, expenses of medical treatments and property damages sustained in the same vehicular accident which gave rise to Mr. and Mrs. Luke's cause of action in the instant suit. All questions common to both actions will be discussed, explained and resolved in this opinion. The resolution of the amount of damages to be awarded Mr. and Mrs. Hebert, individually and on behalf of the minor child, Ferrell Hebert, will be discussed in a separate opinion this day rendered.
In both actions, defendant, John Theriot, Jr., through third party pleadings and as third party plaintiff alleges that Donald Munson was the named insured in a policy of public liability insurance issued by defendant, Lumbermens Mutual Casualty Company, and therein named as third party defendant, covering the operation of the 1959 Mercury automobile which Theriot was driving at the time of the collision. John Theriot, Jr., alleges that he immediately notified Lumbermens Mutual Casualty Company of the accident; however, the latter denied any coverage whatever and denied the alleged obligation to defend said Theriot in the main demand asserted against him by the plaintiffs. In his third party petition, Theriot made claim for 12 per cent penalties on any judgment rendered against him and for attorney fees in the amount of $5,000 incurred in defending himself in this action.
After trial on the merits, the trial court rendered judgment in favor of plaintiffs and against John Theriot, Jr., and specifically awarded Mrs. Ethel Luke the sum of $8,500 and Lawrence Luke the sum of $1,456.94, all with legal interest from date of judicial demand.
The trial court rendered judgment rejecting the plaintiffs' demands against defendants, Donald Munson and Lumbermens Mutual Casualty Company, at their costs; and further, there was judgment in favor of Donald Munson and Lumbermens Mutual Casualty Company rejecting the demands made in the third party petition of John Theriot, Jr., at his costs.
From this judgment, plaintiffs and defendant, John Theriot, Jr., have appealed devolutively.
The facts of the occurrence of the accident are simple and almost free of dispute. The only serious dispute as to the facts of the accident is that defendant Theriot maintains he was blinded by the headlights of an approaching vehicle and that this prevented him from seeing the vehicle whose rear he struck. This accident occurred south of Houma in Terrebonne Parish on the Grand Caillou highway. The State Trooper who investigated the accident, testified that this highway was paved, level and two-laned, with a total paved width of about twenty feet. On the night of April 20, 1963, at the hour of 10:45, a Mr. Louis J. Bergeron was driving his 1953 Dodge sedan north toward Houma. At this time and immediately in rear of the Bergeron automobile, defendant, Theriot, traveling alone, was driving his 1959 Mercury sedan. Meeting the Bergeron vehicle, traveling south, was a 1961 Comet station wagon owned by Vernon J. Hebert and driven by his wife, Mrs. Gertie Hebert. It was in this vehicle that Mrs. Ethel Luke was a guest passenger, as well as Mr. and Mrs. Hebert's minor son, Ferrell Hebert. As the Hebert and Bergeron vehicle approached each other and as they were in close proximity, John Theriot, Jr., drove his automobile into the rear of the Bergeron vehicle with such force as to cause the Bergeron vehicle to go uncontrolled *688 into the ditch on the right side of the highway. As a result of striking the Bergeron sedan, Theriot's Mercury sedan went out of control into the left lane of traffic and immediately in front of the Hebert station wagon. These two vehicles collided head-on.
The only reason defendant Theriot assigns for striking the rear of the Bergeron vehicle, which set in motion the collision between his Mercury automobile and the Hebert station wagon, as stated supra, is that he was blinded by the bright lights of a vehicle he claims he was meeting and which was preceding the Hebert station wagon. This does not relieve Theriot, even if he had proved such occurred, of his legal liability for the damages occasioned through his negligence. All witnesses and persons involved in the accident testified positively that there was no such vehicle on the highway. The proof is conclusive that the headlights on the Hebert station wagon were on dim or low beam, and the tail lights on the Bergeron vehicle were burning and were clearly visible.
The trial judge found that this accident was caused solely by the negligence of John Theriot, Jr. The judge a quo found this negligence consisted of "following too closely behind the Bergeron vehicle, failing to observe the Bergeron vehicle, failing to apply his brakes in time to avoid a collision with the Bergeron vehicle and failing to maintain his own vehicle under proper control." In this finding, we completely agree and concur.
Defendants, Donald Munson and his public liability insurer, Lumbermens Mutual Casualty Company, were sued herein on the alleged fact that the automobile driven by Theriot was in fact owned by Donald Munson and that Theriot was using this Mercury sedan with his, Munson's, permission and consent, and further, on the alleged fact that Theriot should have the benefit and protection of Munson's public liability insurance under the provisions of the omnibus clause of the insurance policy.
Similarly, Theriot's theory of the case is that the Mercury automobile was the property of Munson and he should be afforded the protection of the said insurance policy.
The trial court found that Theriot was the owner of the vehicle, having acquired it in January, 1963. Also the trial court found that Donald Munson had no insurable interest in this vehicle. Mr. Munson was in no way legally responsible for the acts of Theriot. It further found no coverage by Lumbermens Mutual Casualty Company under the policy the latter had issued to Munson.
While plaintiffs and the defendant, Theriot, have not assigned identical specifications of error to the judgment of the trial court, a fair statement of the assignment is set forth, as follows:
1. That Donald Munson was the legal owner of the automobile at the time of the accident; and
2. That Donald Munson had an insurable interest in the automobile at the time of the accident.
Considering first the question of who was the owner of the Mercury automobile at the time of the accident, we find, without the slightest reservation that the trial court correctly held that Theriot was the owner. The controversy and confusion which has arisen over the question of ownership appears to have been engendered by the manner in which certain documents were completed insofar as recorded title was confected to comply with the motor vehicle certificate of title law and procedure. It appears that the application for transfer of title to the subject vehicle was not completed until August, 1963. Appellants would have us hold that because consummation of the transfer did not take place until after the accident, title to this vehicle did not pass from Munson to Theriot *689 prior to the accident on April 20, 1963. There is no merit to such a contention.
The evidence shows that Donald Munson was employed by Commercial Security Company, a loan company, in some sort of managerial position. Sometime before this transaction, Munson and Theriot had had prior dealings. Munson was the owner of a 1959 Mercury sedan on which there was a chattel mortgage securing the unpaid balance on a promissory note executed by Munson. Theriot was the owner of a vehicle of earlier vintage and was interested in acquiring the Munson Mercury. On January 5, 1963, Munson and Theriot made a swap of these vehicles and in the transaction Munson was to receive a certain sum of money in addition to the vehicle he received from Theriot. As Theriot did not have such funds with which to pay Munson, Theriot, on said date, executed a promissory note for the amount Munson was to receive, and he also executed a securing act of chattel mortgage on the Mercury. The formal transfer of title to comply with the certificate of title law could not be completed at this time because apparently Munson had an outstanding chattel mortgage on this vehicle. Between January 5, 1963, and the date of the accident, Theriot made three monthly payments on his promissory note secured by chattel mortgage on the Mercury. The evidence is abundantly clear that he had complete and continuous possession of the vehicle from January 5, 1963. On August 23, 1963, and apparently after Munson had discharged the debt he owned on the Mercury, the necessary documents were executed to complete the formal transfer of record title to Theriot of said vehicle.
Mr. Munson was not available for the giving of testimony as to the facts surrounding this transaction because his whereabouts were unknown. However, John Theriot, Jr., was available and did give testimony, a pertinent part of which follows:
Q. You had some type of transaction with Mr. Munson, didn't you?
A. I had a '56 Chevrolet didn't have any motor in it. Me and Stovall was friends so he was working for Mr. Munson, so I gave the Chevrolet to him for the car, and he was supposed to straighten it out.
Q. When was that?
A. That was in '63. I done forgot the exact date. Around January.
Q. Around January you gave Mr. Munson your old automobile. Did you give him any money?
A. No money.
Q. Did you sign any notes?
A. I signed papers. You see, I had been dealing with him before.
Q. You mean you gave him your old automobile and you signed some papers and he gave you another automobile?
A. Yes.
Q. Then at that time what did you think that was all about?
A. That he was supposed, he was supposed to come back and he was supposed to straighten it out.
Q. At the time you took the automobile in January, 1963 did Munson ever drive that automobile after that?
A. No, he never did drive it.
Q. What did you think that, kind of arrangement was? Were you renting the automobile?
A. No. I took the automobile. I was going to try it when I come back he was going to fix the papers up for me to make the deal, but he never did have anything to give me.

*690 Q. In January when you went there with your old car and got this '59 Mercury did you and Mr. Munson agree to a price on that automobile?
A. I told him I would take it.
Q. For the price that you agreed upon with him, is that right?
A. Yes, sir.
Q. And after that between then and the accident you made about three payments, is that right?
A. That's right.
LSA-C.C. Article 2456 provides:
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
We concur in the finding of the trial court that:
"Although John Theriot, Jr. denies that he acquired ownership of the 1959 Mercury in January of 1963, he does admit that he and Munson agreed on the 1959 Mercury as the object of the transaction and that they agreed on a price. (Tr. 46, 50, 56 and 62) The evidence also shows that the possession of the 1959 Mercury was delivered to Theriot in January of 1963 and that he retained this possession and drove this vehicle until the date of the accident. * * *."
Also see Ward v. Parker (La.App., 1963) 151 So.2d 108.
We have no hesitancy in finding that the requirement of a sale was fulfilled between Munson and Theriot in January, 1963, because there was an agreement for the object and for the price thereof. If further support for this conclusion be needed, it is found in the fact that Theriot, in January, 1963, did execute a promissory note for the balance due Munson and did grant a chattel mortgage on this vehicle to secure the payment thereof, and did make three monthly installment payments on this promissory note prior to the accident.
In the cases of Transportation Equipment Company v. Dabdoub (La.App., 1954) 69 So.2d 640, H. G. Williams Motor Company v. Zeagler (La.App., 1957) 92 So.2d 291, and Whitten v. Travelers Insurance Company (La.App., 1962) 141 So.2d 40, as well as in other cases, the courts of this state have held that title to motor vehicles, though imperfect, may be transferred between the parties in accordance with the provisions of the Civil Code even though they have not complied with the motor vehicle certificate of title law, and that the enactment of the law regulating the certification of title to motor vehicles did not have the effect of repealing the Civil Code provisions as to consummation of a sale between parties to the transaction.
As to the second assignment of error that Munson had an insurable interest in the automobile at the time of the accident, it must be remembered that the type insurance which was provided by this policy was public liability; that is, protection to the insured for property damage or bodily injury damages inflicted through the negligent operation of the vehicle. No collision coverage was afforded. Therefore, for Munson to have an insurable interest in this vehicle, or the operation thereof by Theriot, there must have existed some vicarious relationship between Munson and Theriot. No relationship was shown to exist between them whatever, except buyer seller. Theriot did not operate said vehicle as the agent for Munson, and Munson neither possessed nor exercised any control over Theriot. From the record, it is crystal clear that no relationship whatever existed between them. There is no showing of an insurable interest in Munson in the operation of this vehicle.
*691 Furthermore, the contract between Lumbermens Mutual Casualty Company and Munson was a personal contract entered into on the basis of certain representations between the parties. This contract cannot be assigned or transferred without the consent, permission and approval of both contracting parties. We find no public liability insurance coverage was afforded to defendant, John Theriot, Jr., by this policy of public liability insurance.
As none of the parties who have appealed have, in any way, questioned the correctness of the amount of the award of damages to plaintiffs, we find no need to discuss quantum.
Accordingly, for the foregoing reasons, the judgment appealed from is affirmed, at appellants' cost.
Affirmed.