LOTTINGER, Judge.
Four suits for damages ex delicto were consolidated below for the purposes of trial. All of these cases came to this Court on appeal under one record, and they will all be treated in this opinion as one judgment rendered.
In one of the said suits Eugene Thibeau filed suit against George LeBlanc, Jr., Mrs. Antonia M. Guedry, The Travelers Insurance Company and Connecticut Fire Insurance Company, as defendant^. Other suits were filed by Paul Richard, Mrs. June Lyons Feenstra, and Mildred McDonald Roberts, in each of which the defendants are George LeBlanc, Jr., Mrs. Antonia M. Guedry, Eugene Thibeau, The Travelers Insurance Company (hereinafter referred to as Travelers), the Connecticut Fire Insurance Company (hereinafter referred to as Connecticut) and General Fire and Casualty Company (hereinafter referred to as General).
The Connecticut Fire Insurance Company had issued a liability policy of insurance in the name of George LeBlanc, Jr., covering the 1958 Studebaker automobile which was driven by Mrs. Guedry at the time of the accident. There is a question as to the ownership of the Studebaker automobile as well as a question as to whether or not this policy had been canceled prior to the accident. Travelers Insurance Company had in effect at the time of the accident policies of insurance covering a truck and an automobile owned by George LeBlanc, Jr., but neither of which *710 were involved in the accident. General Fire and Casualty Company was the liability insurer of the automobile owned and driven by Eugene Thibeau at the time of the accident.
The Lower Court rendered a judgment in favor of Eugene Thibeau and against Connecticut and Travelers, in solido, for the sum of $5,772.73. Judgment was rendered in favor of Paul Richard, in his suit, against Connecticut and Travelers in solido, in the sum of $785.00. Judgments were also rendered in favor of Mrs. June Lyons Feenstra and against Connecticut and Travelers, in the sum of $334.50, and in favor of Mrs. Mildred McDonald Roberts and against Connecticut and Travelers, in solido, in the sum of $5,622.50. Connecticut-and Travelers have each appealed. All of the petitioners have answered the appeal.
The accident which gave rise to this suit occurred on December 9, 1961, on Louisiana Highway No. 429 in the Parish of Ascension, Louisiana. Just previous to the accident, the petitioner, Eugene Thi-beau, was proceeding in an easterly direction on Louisiana Highway No. 429, which is a two-lane hard surfaced roadway. It was raining at the time of the accident.
As Mr. Thibeau was proceeding along the highway, he saw another car stranded in the ditch some two to three hundred feet in front of him. As he approached this vehicle, the occupants thereof signaled for him to stop to render them assistance. Mr. Thibeau came to a stop some fifty feet beyond the stranded vehicle, and proceeded to back up. While he was still in the process of backing, or after he had completed his backing operation and was stopped partly on the highway, the Thibeau Rambler was violently struck from the rear by the automobile driven by Mrs. Guedry. The question of whether Mr. Thibeau was still in the process of backing at the time of the accident is one of the points at issue. There is also a question of the location of the Thibeau vehicle at the time of the impact.
Mr. Richard, Mrs. Roberts, and Cheri Ann Dentino, the minor daughter of Mrs. Feenstra, were guest passengers in the automobile driven by Mrs. Guedry. Mrs. Feenstra’s suit, therefore, was for damages individually as well as for the use and benefit of her minor child. Miss Den-tino has since become emancipated by marriage and has entered the suit on her own behalf.
With regard to the accident itself, Mr. Thibeau, as well as his witnesses, Arthur LeBlanc and George W. Barker, both of whom were in the vehicle which was stranded in the ditch, testified that Mr. Thibeau had passed their automobile for some distance, stopped, then backed to a position opposite them and was stopped at the time of impact. Mr. Thibeau said that he had been stopped for about one minute before the impact. He testified that after backing and coming to a stop he leaned over to his right side, reached over his mother who was seated to his right, opened the window and asked the people in the stranded vehicle what they needed before the impact occurred. Although he claimed that he had been flagged down by the occupants of the' other vehicle this was denied by both Mr. LeBlanc and Mr. Barker. Mr. Thibeau’s mother, who was riding in the car with him, died prior to trial below. Mr. Thibeau testified that when he first applied his brakes he looked in his rear view mir- or and saw the Guedry vehicle a “good way back” of him. He did not again look in his rear view mirror when he was backing up. The record reflects that the highway was straight and level.
Mr. LeBlanc testified that the Thibeau car passed them a distance of twenty-five to fifty feet and then backed up and stopped opposite them. He said that the Thibeau vehicle had been stopped “inside of a minute” before the impact. He stated that, at the time of the impact, he was in the process of getting out of the car.
Mr. George W. Barker also stated that the Thibeau vehicle had passed them some *711 fifty or sixty feet and had stopped, backed up and again stopped some thirty to sixty seconds before the time of the impact. He had not yet gotten out of his car at the time of the accident, but was starting to open the door.
All three of these witnesses testified either that it was not raining at the time or that the rain had slackened to a slight drizzle. They estimated the visibility at from two to five blocks.
Mrs. Guedry was unable to be served with process, as her whereabouts were unknown, and she was not present to testify at the trial.
Mrs. Mildred M. Roberts, Mrs. Cheri Ann Dentino Hibbard and Paul Richard all testified that it was raining very hard at the time of the accident. Mrs. Roberts, who was seated in the right front of the Studebaker automobile, testified that Mrs. Guedry was, in her estimation, driving too fast under the existing rainy conditions. As they approached the scene of the accident,- Mrs. Roberts suddenly noticed the Thibeau vehicle not over two car lengths away in front pf them and yelled “look out”. She claims that the white backup lights were on and that the Thibeau vehicle appeared to be backing on the blacktop roadway. She had seen the Thibeau vehicle previously when it was at a greater distance, two or three car lengths away, but didn’t realize he was backing. She stated that she really doesn’t remember whether Mrs. Guedry tried to apply her brakes as she was excited and they were too close to the other car.
Mrs. Cheri Dentino Hibbard was seated at the right rear of the Studebaker. She first saw the Thibeau car when her grandmother, Mrs. Roberts, yelled “look out”. She looked up and saw the backup lights just at the. time of the impact. She says it was pouring down raining at the time and she could not say whether the other car was moving at the time of the accident.
Mr. Paul Richard, who was seated at the left rear of the Studebaker, looked up when he heard Mrs. Roberts yell but all he saw was fog and rain. He did not see the other car; however, he did see the flash of two lights just before the impact. Both Mrs. Hibbard and Mr. Richard testified that there was no sudden jerk or other indication that Mrs. Guedry attempted to apply her brakes.
All three of the passengers in the Guedry car testified to the effect that Mrs. Guedry was driving too fast for the prevailing conditions. Mr. Richard placed her speed at over fifty miles per hour. All of the witnesses testified that there was very little traffic on the highway. There was no evidence of any oncoming vehicle which would have prevented Mrs. Guedry from turning to her left to avoid the collision had she seen the Thibeau vehicle in time, and it is apparent that she either did not attempt to apply her brakes or that she was so close to the other vehicle when she did make the attempt that she didn’t have time to effectively apply them.
Our appreciation of the evidence is to the effect that Mr. Thibeau was negligent in coming to a stop on the highway and then backing up. We feel that backing up on a travelled highway is a most dangerous operation and should be done only with extreme caution. However, the Lower Court was impressed by the testimony of Mr. Arthur LeBlanc and Mr. George W. Barker, both unbiased witnesses, who testified that the Thibeau vehicle had backed to a complete stop with its right wheels as far off the highway as possible for several seconds prior to the impact. They both testified that the rain had either stopped or slackened to a drizzle and that the visibility at the time was such that Mrs. Guedry had ample opportunity to stop had she been paying attention to the Thibeau automobile.
It appears to this Court that the negligence of Mr. Thibeau in backing his automobile on the highway, which was little *712 travelled, was passive at the time of the accident as he had already come to a stop for some period of time. The fact that he was stopped with his gears still in reverse would account for his backup lights being lit. Although we might say that he was guilty of some negligence in being stopped partly on the highway, he was playing the part of a good Samaritan and was parked as far off the highway as conditions permitted. On the other hand, the evidence reflects that Mrs. Guedry was not only driving at an excessive speed under the circumstances but that she was not keeping a proper lookout.
As there was no oncoming traffic to obstruct Mrs. Guedry from turning to the left to avoid striking the parked automobile, we feel that the Lower Court correctly held that Mrs. Guedry had the last clear chance of avoiding the unfortunate collision.
With regard to the question of insurance coverage by the policy issued by Connecticut, the said insurance company had denied any coverage on the Studebaker automobile on the grounds that “(1) The policy had been canceled prior to the accident, (2) even if it had not been canceled, it would not apply to the Studebaker automobile as same was not owned by George LeBlanc, Jr. in whose name the policy had been issued.”
The undisputed facts surrounding the ownership of the Studebaker was to the effect that sometime previous to the accident Mr. Joseph Lambert, a local insurance agent representing Connecticut, owned the Studebaker automobile and wished to dispose of it. He located a prospective purchaser, Mr. Guedry, who had neither the cash to pay for the car nor was his credit such as would enable him to finance it. Mr. LeBlanc was called upon for assistance and, for convenience only, the title to the automobile was placed in his name and he signed a note and a chattel mortgage on the vehicle which was held by a local bank. With full knowledge of these facts, Mr. Lambert issued the policy in the name of Mr. LeBlanc who subsequently paid off the balance due on the car when Mr. Guedry defaulted. Title to the car remained in the name of Mr. Le-Blanc until after the accident.
A similar situation of fact surrounding the ownership of the automobile is found in the recent case entitled Luke, et al. v. Theriot, Jr., et al., La.App., 195 So.2d 685, which was decided by this Court. There, although the certificate of title on the automobile remained in the name of Donald Munson, the vendor, we found that the ownership of the vehicle had been transferred to Mr. John Theriot, Jr. Article 2456 of the Louisiana Civil Code provides:
“The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.”
In holding that the sale had been perfected between the parties and that the automobile was owned by Mr. Theriot at the time of the accident, we said :
“We have no hesitancy in finding that the requirement of a sale was fulfilled between Munson and Theriot in January, 1963, because there was an agreement for the object and for the price thereof.”
“If further support of this conclusion be needed, it is found in the fact that Ther-iot, in January, 1963, did execute a promissory note for the balance due Munson and did grant a chattel mortgage on this vehicle to secure the payment thereof, and did make three monthly installment payments on this promissory note prior to the accident.”
With regard to the second contention of Connecticut, i. e., that the policy of insurance had been canceled, we have the testimony of the officials of the insurance company that after the policy had been issued in the name of Mr. LeBlanc, it was decided *713 that he was a poor risk and that the policy-should be canceled. They testified that a notice of cancellation was prepared, taken to the Post Office and handed to a postal clerk. Connecticut’s agent in the area, Mr. Lambert, knew of the proposed cancellation and tried unsuccessfully on one occasion to telephone Mr. LeBlanc and inform him of same. Although this attempt was not successful, the record discloses that Mr. Le-Blanc delivered milk to Mr. Lambert’s store almost daily, and that the latter knew Mr. LeBlanc’s address and that he had a telephone, yet never did he advise him of the cancellation, nor did he request return of the policy, nor did he return the unearned premium. Mr. LeBlanc testified that he never received such a notice of cancellation, and had no idea that the policy had supposedly been canceled until after he had reported the accident to Mr. Lambert. The Vice-President of the mortgagee bank, in whose favor a loss payable clause was contained in the policy, testified very emphatically that he could not recall nor find any letter or indication in the bank records that a notice had ever been received by the bank. The record further shows that no return was made of the unearned premium after the alleged cancellation.
Connecticut contends that under the provision of Title 22, Section 636 of the Louisiana Revised Statutes, they have offered due proof that the notice was mailed and this is all that is necessary as proof of delivery is not required. It is true that they have made a prima facie case by showing the mailing of the notice of cancellation, but this showing is offset by other facts. The jurisprudence makes it clear, however, that the burden of proving cancellation is upon the insurer. Alexander v. State Farm Mutual Automobile Insurance Company, La.App., 148 So. 2d 898. See also Townzen v. Allstate Ins. Co., La.App., 188 So.2d 474, writs denied. If both notices of cancellation had actually been mailed, as testified by Connecticut’s employees, it is extremely unlikely that both Mr. LeBlanc and the mortgagee bank would have failed to receive same. We therefore concur in the decision of the Lower Court to the effect that the policy of insurance issued by Connecticut had not been canceled at the time of the accident.
Connecticut claims that, inasmuch as the vehicle driven by Mrs. Guedry was not owned by its named assured, George LeBlanc, at the time of the accident, the policy of insurance would not cover the damages resulting from the accident. It is the contention of this insurance company that the true owner of the automobile was Nelson Joseph Guedry. As we have stated before, we feel and have held that Mr. Guedry was the owner of this vehicle at the time of the accident.
Title 22, Section 614 of the Louisiana Revised Statutes provides as follows:
“A. No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured.
B. “Insurable interest” as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage. Amended and reenacted Acts-1958, No. 125.”
In Maggio v. State Farm Mutual Ins. Co., La.App., 123 So.2d 901, we were presented with the situation where the owner of a motor vehicle which was insured under a liability policy in the name of the owner was sold to another party under an agreement whereby the title of the automobile would remain in the vendor until the purchaser had completed the payments for the car. The agent of the insurance company knew of the arrangement between the parties, and issued a liability policy on the car in the name of the vendor. Thus the named insured in the policy was not the true owner of the vehicle at the time of the accident. Suit was filed for damages under the liability *714 provisions of the insurance policy and the Court held that the insurance company was estopped to deny coverage, saying:
“[I]f an insurance policy within the actual intention of the parties is issued for the protection of another than the named insured, the insurer may be held to have afforded such protection by the policy, or to be estopped to deny it; also, the policy may be equitably reformed to show the true intention of the parties in this regard. Christo v. Eagle Star Ins. Co., 232 La. 28, 93 So.2d 682; Randazzo v. Insurance Co., etc., 196 La. 822, 200 So. 267; Dutton v. Harmonia Ins. Co., 191 La. 72, 184 So. 546; Pope-Cammill Lumber Co. v. Zurich Gen. Acc. & Liab. Ins. Co., 168 La. 422, 122 So. 278; Churchman v. Ingram, La.App. 2 Cir., 56 So.2d 297; Crowell v. New Hampshire Fire Ins. Co., La.App. 2 Cir., 147 So. 762.”
Thus in the Maggio case, we held that the insurance company was estopped from raising the question of insurable interest where the policy was issued in the name of another than the owner of the motor vehicle. We feel that Connecticut is now without right to deny liability under the provisions of its policy when sued in damages by parties other than those to the contract of insurance. The agent of the company knew of the arrangement between the seller of the automobile and the purchaser of the automobile, he knew that the named assured was not the owner of the vehicle, and such knowledge is imputable to his principle. See also Collins v. State Farm Mutual Automobile Ins. Co., La.App., 188 So.2d 460.
In Luke v. Theriot (supra), the Court denied coverage where the owner of the automobile was not the named assured in the liability insurance policy. However, there is one important distinction between the Luke case and the present one. In the Luke case, it was not shown that the insurance company nor its agent had knowledge that the named assured was not the owner of the vehicle. In this case, however, the agent of the insurance company had such knowledge, in fact, he was a party to the sale of the automobile from LeBlanc to Guedry, and that, therefore, the named assured, Mr. LeBlanc, was not the owner of the automobile.
This same theory of estoppel, however, does not apply with regard to coverage by Travelers. There are two Travelers policies filed in the record, both of which are in the name of George LeBlanc, Jr., one covering a 1955 Chevrolet Van Truck, the other a 1960 two door Pontiac sedan. Petitioners contend that the family automobile policy issued on the Pontiac sedan provided coverage to the 1958 Studebaker because that automobile was not specifically excluded from the scope of the policy. In support of their contention, petitioners cite Le Jeune v. State Farm Mutual Automobile Ins. Co., La.App., 107 So.2d 509.
In the Le Jeune case, a guest passenger sued for injuries sustained when the 1947 Chevrolet automobile in which she was riding was involved in a two car collision. This Chevrolet automobile belonged to Peter DeBenedetto, who held an insurance policy on another automobile, a 1954 Chevrolet. At the time of the issuance of the policy, DeBenedetto owned both the 1947 and 1954 Chevrolets, however, only the 1954 automobile was covered by the insurance policy.
Subsequent to the issuance of the policy, but prior to the accident, the Casualty and Surety Division of the Louisiana Insurance Rating Commission issued Bulletin No. 195. This directive was addressed to all insurance companies and required coverage to relatives of the insured household and to all of the insured’s automobiles, unless a specific endorsement was added to the policy to exclude a named automobile. Thus, under the provisions of the directive, the Court held coverage of the policy to extend to the 1947 Chevrolet automobile, as it was not specifically excluded.
*715 In the Le Jeune case, the automobile not named in the insurance policy was owned by the named assured. However, in the present suit, the Studebaker automobile was not owned by the named assured and, therefore, the theory as set forth in the Le Jeune case will not serve to extend coverage to the Studebaker automobile.
Petitioners further argue that the “omnibus” clause of the policy would afford coverage to the Studebaker, as Mrs. Guedry was driving the car with the “permission” of - the named assured. We are not impressed with this argument as permission of the named assured presupposes that the assured is the owner of the vehicle.
Mr. Thibeau was paraplegic at the, time of the accident. As a result thereof, he was taken to a hospital in Baton Rouge for emergency treatment and was then transferred to the Veterans Administration Hospital in New Orleans where he remained twenty-four days. After his release, he was required to return to the hospital periodically for án additional five or six months. He suffered severe pain while hospitalized and was placed in traction. Following the accident, and as a result of the injuries sustained, he was unable to shave himself and drive his automobile for about four months. He testified at the trial, which was some four years after the accident that he was still having difficulty with his hands and arms and that the strength in these extremities was less than previous to the accident.
The record shows that Mr. Thibeau suffered special damages of $772.73. In addition to said amount, the Lower Court awarded him the sum of $5,000.00 for his injuries and suffering, past and future, thus making a total judgment in his favor in the sum of $5,772.73.
Following the accident, Cheri Ann Dentino, now Mrs. Hibbard, was taken to the Baton Rouge Hospital by ambulance and examined and treated for bruises and contusions to her right hip and tibia. She experience pain for some period of time following the accident and during October of 1962 X-rays were taken as a result of her complaints of pain. The Lower Court awarded her $84.50 as special damages and the sum of $250.00 for pain and suffering, thus making a total award of $334.50.
Mr. Paul Richard suffered injuries consisting of lacerations of the face which resulted in three scars. Following the accident, he was sutured on the forehead, cheek and chin, and the stitches were removed after about two weeks. At the time, he testified that he still suffered some stiffness about the scar on his chin. The Lower Court, in its reason for judgment, stated that it had examined these scars and that they are not’ disfiguring. The Court awarded medical bills of $35.00 and $750.00 for injuries and pain and suffering, making a total award to Mr. Richard in the sum of $785.00.
Mrs. Mildred M. Roberts suffered injuries to her face, facial bones, teeth, neck, shoulders and chest as a result of the accident. These injuries consisted specifically of a broken arm, broken ribs, loss of teeth and various contusions and abrasions. Her total medical bills amounted to $622.50, including an estimate for dentures which she was unable to obtain at the time of trial because of financial distress. She testified that she still suffered some pain around her neck and shoulders, as well as embarrassment as a result of not having teeth. The Lower Court awarded her the sum of $5,000.00 for her injuries and suffering, thus making the total award to her in the sum of $5,622.50.
Due to the nature of the injuries received by the various petitioners herein, we feel that the awards given by the Lower Court were adequate, and the decision of the Lower Court will be affirmed on this score. For the reasons hereinabove assigned, there will be judgment herein amending the judgment of the Lower Court so as to dismiss the claim of all petitioners *716 as against Travelers Insurance Company, and, as amended, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by defendant, The Connecticut Fire Insurance Company.
Judgment amended and affirmed.