646 So.2d 917 (1994)
BAMMA LEASING COMPANY, INC.
v.
SECRETARY OF DEPARTMENT OF REVENUE AND TAXATION, State of Louisiana.
No. 93-CA-881.
Court of Appeal of Louisiana, Fifth Circuit.
September 14, 1994.
Dissenting Opinion November 16, 1994.
Writ Denied December 9, 1994.
*918 Joseph S. Russo (A Professional Law Corp.), Jefferson, for plaintiff-appellant.
James C. Russell, Jr., Baton Rouge, for defendant-appellee.
Before KLIEBERT, BOWES and GRISBAUM, JJ.
KLIEBERT, Chief Judge.
This appeal arises out of an assessment of additional taxes against Bamma Leasing, Inc. (Bamma), appellant, following an audit for the period January 1, 1983 through December 31, 1985, by the appellee, the Louisiana State Department of Revenue and Taxation (Department). Bamma was a Louisiana corporation engaged in the business of financing the sales of automobiles through leases. The Department's audit found that Bamma had not remitted lease taxes [as per LSA-R.S. 47:302(B)] on the automobile monthly rental payments due to Bamma (lessor) from the consumers (lessees). The total assessment of lease taxes due as of April 15, 1987 was $17,775.41, together with interest to April 30, 1987 in the amount of $6,068.91 and penalties in the amount of $2,106.54 for a total assessment of $25,950.86. Bamma has remitted a partial payment on the taxes due in the amount $2,797.47, which represents lease taxes due on equipment leases which Bamma does not contest. According to the Department's counsel, the balance owed by Bamma is $23,153.39, subject to the continued accrual of interest and penalties until paid.[1]
*919 Initially, Bamma appealed this assessment to the Louisiana Board of Tax Appeals (Board). The Board ruled against Bamma. An appeal to the 24th Judicial District Court resulted in the matter's remand to the Board for proper trial and introduction of evidence. The Board once again ruled against Bamma. Bamma appealed to the 24th Judicial District Court once more, with that court ruling in favor of Bamma. The Department appealed to this court. Because the record was in incomprehensible disarray, this Court remanded the matter to the 24th Judicial District Court for correction of the record or, if necessary, retrial before the Board.[2] Because the Clerk of Court of the 24th Judicial District Court could not reconstruct the record, the matter was retried before the Board, who once again ruled against Bamma. The 24th Judicial District Court affirmed the Board's judgment. Bamma appealed to this Court. Once again, we remanded the matter for correction of the record. The record has been relodged with this Court and the appeal now before us involves the district court judgment dated September 8, 1993.
On appeal, Bamma argues that the assessment of additional lease taxes, pursuant to LSA-R.S. 47:302(B), was erroneous. Alternatively, Bamma contends that it is exempt from the payment of the initial sales taxes under the provisions of LSA-R.S. 47:305.36. Third, appellant argues that it is entitled to a refund of the taxes on the monthly rentals paid after 1985 because the payments were made under protest and were not due. Last, Bamma contends that LSA-R.S. 47:1486 is unconstitutional because its prohibition of Court review violates the fundamental right of Bamma to have a meaningful grievance process. For the following reasons, we affirm the judgment of the trial court and remand the matter to the Board of Tax Appeals for recomputation of the interest and penalty, recomputation of the assessment to eliminate the taxes on the missing leases, and for the assessment and collection of taxes, interest and penalties.
First, Bamma appeals the Department's finding that the transactions between Bamma and the consumers constituted leases with options to purchase rather than conditional sales. The record shows that during the audit period, Bamma purchased, registered, and leased some forty-eight (48) automobiles. Bamma's witness, Mrs. Sally Kennedy, testified that Bamma provided financing to purchasers of automobiles (consumers) by way of documents titled "Leases" which Bamma contends were financed leases or conditional sales. The consumer would pick out the car and arrange the financing with the dealership through Bamma. In accordance with LSA-R.S. 47:302(A), Bamma paid the initial sales taxes at the time of registration and acquisition of the car from the dealership. Bamma then entered into a "lease" with the consumer, the title of the automobile remaining in Bamma's name until the provisions of the lease were fulfilled. When the lease was fulfilled, a bill of sale would be drawn up and "even though a tax was paid when we bought the car, he [the consumer] was going to have to pay the tax again, even though a tax was paid when we bought the car" (testimony of Kennedy).
Bamma argues that the leases were financed leases or conditional sales, and not leases with options to purchase (hereinafter referred to as leases), as per the opinion of the Department's auditor. (The distinction carries different tax implications, as is more fully discussed in the next section.) Specifically, Bamma cites the fact that at the end of the lease term, the lessee had the option to purchase the automobile for the consideration of $1.00, which was not always demanded by Bamma. In support of their argument, Bamma points to the definitions of lease and sale found in LSA-R.S. 47:301(7)(a) and (12), respectively, which read as follows:
(7)(a) "Lease or rental" means the leasing or renting of tangible personal property and the possession or use thereof by the lessee or renter, for a consideration, without transfer of the title of such property.
(12) "Sale" means any transfer of title or possession, or both, exchange, barter, conditional *920 or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration, and includes the fabrication of tangible personal property for consumers who furnish, either directly or indirectly, the materials used in fabrication work, and the furnishing, preparing or serving, for a consideration, of any tangible personal property, consumed on the premises of the person furnishing, preparing or serving such tangible personal property. A transaction whereby the possession of property is transferred but the seller retains title as security for the payment of the price shall be deemed a sale. (Emphasis by Bamma).
Bamma also argues that the leases are financed leases because, as per LSA-R.S. 9:3306:
12)(a) "Financed lease" means a lease entered into prior to the time Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.) becomes effective under which:
(i) The lessee is obligated to pay total compensation over the base lease term which is substantially equivalent to or which exceeds the initial value of the leased property; and
(ii) The lessee is obligated to become, or has the option of becoming, the owner of the leased property upon termination of the lease for no additional consideration or for nominal consideration.
The distinction between a valid "lease with option to purchase" and a disguised "conditional sale" is that in the former, there is an option to give additional consideration in order to purchase the leased item at the end of the contract term, while in the latter, there is an obligation to pay the full price regardless of whether the option is exercised or not. Pastorek v. Lanier Systems Co., 249 So.2d 224 (La.App. 4th Cir.1971).
A contract by which a party binds himself to pay in installments a certain sum for the use of a thing, with the privilege of becoming owner thereof upon paying a further sum, for which he has not bound himself absolutely, is simply a lease with an option to purchase, and is not a sale. An alleged lease, in which at the end of the term the lessee is to become owner of the thing leased, in consideration of the rent to be paid, is in fact a sale translative of the property from its very inception. Byrd v. Cooper, 166 La. 402, 117 So. 441 (1928).
Of the forty-eight contracts indicated by the record, documents pertaining to forty-five appear in the record (documentation of the three remaining contracts is missing). Of the forty-five contracts, only thirteen appear to be complete, i.e., signed by both the lessee and lessor. The remaining thirty-two contracts appear to be "partial," i.e., presumably the first page only appears in the record. However, at the hearing before the Board on April 29, 1992, the attorneys for both parties agreed to accept the contents of the record (before us now) as the true representation of documents introduced at the original hearing before the Board. In other words, both parties accept the completeness and propriety of the evidence contained in the current appellate record.
Of these forty-five contracts (both complete and partial) contained in the record, thirteen[3] provided the consumer with an option to purchase the car for a substantial "balloon" payment at the end of the lease term. Six of these thirteen contracts also charged a mileage reimbursement fee due to Bamma during the lease term. Fifteen other contracts[4] failed to provide anywhere in the documents an option to purchase the car for $1.00 (or any amount) at the end of the lease term. Some of these leases provided that *921 the car would be returned to Bamma to be sold after the expiration of the lease term.
The remaining seventeen contracts all contained an option to purchase the vehicle for $1.00 at the end of the lease term. Of these seventeen contracts, the record shows that six lessees did in fact exercise that option, as evidenced by bills of sale (lessees Weinberg, Lundquist, Rittvo, Payne, Piazza, and Gendler). The record contains no showing of whether the remaining ten lessees exercised this option.
The testimony in the record was taken before the Board on August 17, 1988. Bamma's witness, Kennedy, testified generally regarding all the leases, and specifically about none. She said that in each lease, title was made out to Bamma and they paid the initial sales tax due the State under LSA-R.S. 47:302(A). When the lessee desired the title to be transferred to him upon the fulfillment of the lease, a bill of sale was drawn up and "in order to get the car transferred to his name, he was going to have to pay the tax again, or the car wouldn't be transferred to his name." She said that of all the lessees who had the $1.00 purchase option, none had ever failed to buy the car. Kennedy admitted that the leases contained the entire understanding between Bamma and the lessees, and if someone didn't know better, the documents all looked like leases with options to purchase instead of the conditional sales claimed by Bamma.
Kennedy described several instances when Bamma had to repossess a car when a lessee defaulted. The lessee was not sued for the remaining lease payments, but the car was usually sold for a loss to a used car dealership.
All of the leases utilized one of two standard forms. The agreement is entitled "Motor Vehicle Lease." Each party to the agreement is consistently referred to as a "lessor" and a "lessee." The terms of these leases are broken down into "rental units" which are not attributable to a total purchase amount as would have been present in a financing agreement of a sale. Additionally, Bamma executed no separate notes on the financing of these sales, and Bamma has admitted that it depreciated the vehicles involved in these transactions on its federal income tax returns during the audit period.
Considering the statutes, jurisprudence, and record evidence before us, we find that the aforementioned first thirteen transactions[5] are clearly leases with options to purchase, and not conditional sales. The next fifteen leases[6] do not contain any option for the lessee to purchase the vehicle at the end of the lease term, and also provide for the lessor's disposition of the vehicle at the end of the lease term. We also conclude that these transactions are leases and not conditional sales.
Of the seventeen leases remaining, Kennedy's testimony is the crucial factor that leads us to conclude that these are also leases with options to purchase and not conditional sales, as per LSA-R.S. 47:301(12) (as emphasized above). In addition to the factors she mentioned above, in all of the seventeen leases last mentioned the option to purchase the car was discretionary. Also, the document did not allow the lessee to alienate the car before the end of the lease term. The discretionary option to purchase distinguishes these transactions from the emphasized language in LSA-R.S. 47:301(12) upon which Bamma relies. Also, none of the leases fit the description of a financed lease found in LSA-R.S. 9:3306(12)(a).
Bamma cites Easy T.V. & Appliance Rental of La., Inc. v. Department of Revenue and Taxation, 556 So.2d 100 (La.App. 4th Cir. 1990), writ denied, 559 So.2d 1375 (La.1990) in support of their position. In that case, Easy was a business engaged in the transfer of small appliance items to consumers by way of "rent-to-own transactions." Using the criteria in Pastorek, supra, and LSA-R.S. 47:301(12), the Court concluded that the transactions were conditional sales and not leases. The Court recognized that it was the intent of the parties that ownership be transferred to the first customer who can meet all payments. The customer had the right to *922 discontinue the payments by returning the item to Easy, whereupon it would re-rent the item. Upon fulfillment of the payments, Easy would transfer ownership of the item to the consumer for no additional consideration. Comparing the instant case to Easy, it is apparent that Bamma's reliance thereupon is misplaced.
Considering the above statutory and jurisprudential authorities, we find no manifest error in the trial court's affirmance of the judgment of the Board, finding that the questioned transactions were leases with options to purchase and not conditional sales, and that the lease tax in LSA-R.S. 47:302(B) was due.
Next, if we agree with the trial court's finding, Bamma contends that it is exempt from the payment of the initial sales taxes under the provisions of LSA-R.S. 47:305.36. To answer this question fully, we will first discuss the taxation scheme as found in LSA-R.S. 47:302 et seq.
LSA-R.S. 47:302 establishes a tripartite scheme of taxation on articles of tangible personal property sold, used, or leased in this state. Section 302(A)(1) imposes a tax on the intangible transaction called a sale of tangible personal property. The tax is measured by the selling price of the item. Section 302(B)(2) contains the use tax which is designed to complement the sales tax and is imposed on the use of tangible personal property when the same is not sold but is used, consumed, distributed or stored for use or consumption in this state. It is not duplicative of, but rather is complementary to, the sales tax in Section 302(A)(1). Section 302(B) establishes a separate tax upon the lease or rental within Louisiana of each item or article of tangible personal property. Bamma's argument is is essentially that the sales/use taxes and the lease taxes are duplicative of one another; or, that Bamma is exempt from the payment of the initial sales taxes under the provisions of LSA R.S. 47:305.36.
Bamma's argument regarding the duplication of the sales/lease taxes was addressed by the Court in State v. U-Drive It Car Co., 79 So.2d 590 (La.App. 4th Cir.1955). That case involved the assessment and levy of the sales tax due under Section 302(A)(1) on automobiles the defendant bought for rental purposes. The Court in U-Drive It recognized that the taxes imposed by Section 302(A) and (B) are two separate taxes imposed on two discrete transactions and are not duplicative of each other. The Court found that:
"In conformity with the doctrine of statutory interpretation it is fundamental that if the definition of sale included lease or rental, a separate definition thereof would not have been provided in the statute. Likewise a separate levy would not also have been provided, as is reflected by the enactment of LSA-R.S. 47:302(B) ..."

* * * * * *
Further:
"... an analysis of the statute fails to disclose any immunity from the tax imposed by 47:302(A) (a tax upon the sale at retail) because of payment of the tax imposed by 47:302(B) (a tax upon the `lease or rental * * * of * * * personal property')."
Finally, the Court held that the wording of LSA-R.S. 47:302 was clear, unambiguous, and needed no construction. "A sale and a rental are entirely distinct transactions, and this is fully recognized by the statute as we have indicated elsewhere in this opinion."
More recently, the Louisiana Supreme Court stated succinctly in Lafayette Parish School Board v. Market Leasing, 440 So.2d 81 (La.1983):
"Thus, both the state and local laws contemplate that there are two taxable transactions when a party purchases a vehicle and then enters into a long-term lease of that vehicle. Moreover, the two taxes are imposed on two different parties. In the first transaction (the sale) the tax is imposed on the purchaser (who ultimately becomes the lessor), while in the second transaction (the lease) the tax is imposed upon the lessee. Finally, the sales tax is a one-time levy on the amount of the sale, whereas the lease tax is a recurring levy on the amount of each monthly rental installment paid or agreed to be paid by the lessee. See La.R.S. 47:301B(2) and Ordinance *923 No. 1, Section 2.01(4). Of Course, the amount of the tax on the lease is considerably different from that on the sale, depending on the amount of monthly rental installments and the term of the lease.
On the basis of all these considerations, we conclude that the lower courts erred in holding that the Board could not collect a tax from defendant on leases of vehicles merely because defendant had already paid a tax on the retail sale of the vehicle."
440 So.2d at 83.
Therefore, because our legislative scheme of taxation envisions a separate tax on the distinct transactions of sale and lease, and the two taxes are not duplicative, Bamma is not entitled to a refund of its payment of the initial sales taxes paid upon the acquisition and registration of the vehicles.
However, Bamma argues that it is exempt from the payment of the initial sales taxes under the provisions of LSA-R.S. 47:305.36, which reads in pertinent part:
A. A tax imposed by R.S. 47:302(A), R.S. 47:321(A), and R.S. 47:331(A) shall not apply to the sale at retail, the purchase, lease, or the importation of motor vehicles, trailers, or semitrailers as defined by R.S. 47:451 that will be stored, used, or consumed in this state exclusively for lease or rental, provided that the gross proceeds derived from the lease or rental of the property not previously taxed shall be at reasonable market rates. If the secretary of the Department of Revenue and Taxation finds that any person who has purchased, used, or imported motor vehicles, trailers, or semitrailers tax free under this Subsection has subsequently leased or rented motor vehicles, trailers, or semitrailers in transactions not at arms length at below market rate, the secretary shall presume that the person was not entitled to claim the exemption provided herein, and the burden shall be on that person to prove otherwise.
B. A person who has acquired or used property under this Section without payment of the tax imposed by R.S. 47:302(A), R.S. 47:321(A), and R.S. 47:331(A) shall be construed to be in the business of leasing, renting, or selling such property, whether or not the lessees have the right or obligation to purchase the tangible personal property or will otherwise acquire title to the property at termination of the lease. Therefore, a transaction entered into that is entitled lease, rental, lease-purchase, or similar name which for purposes other than state sales taxation might be considered a conditional sales contract or transaction in lieu of sale, shall be deemed for state sales tax purposes to be a taxable lease. The monthly or other periodic payments made under the agreement shall be subject to the tax imposed by R.S. 47:302(B), R.S. 47:321(B), and R.R. 47:331(B). These persons shall not be allowed to make an isolated or occasional non-retail sale of the property under R.S. 47:301(1) or R.S. 47:301(10).
C. (1) No person shall be entitled to purchase, use, or import motor vehicles, trailers, or semitrailers, under this Section without payment of the tax imposed by R.S. 47:302(A), R.S. 47:321(A), and R.S. 47:331(A) before having received an exemption number or certificate from the secretary of the Department of Revenue and Taxation authorizing him to engage in the business of purchasing, using, or importing motor vehicles.
* * * * * *
E. (2) The tax imposed by R.S. 47:302(B), R.S. 47:321(B), and R.S. 47:331(B) shall not be due as provided by R.S. 47:305.23 prior to its repeal in the 1982 Regular Session, on the lease or rental of automobiles and trucks for a period of six months or longer duration, but only if the Louisiana sales or use tax imposed on the sale price or cost price of the automobiles and trucks was paid at the time the vehicles were titled in and/or transferred into the state and the vehicles were placed in lease or rental service prior to the effective date of this Section.
It is well settled that exemptions from taxation, being an exceptional privilege, are strictly construed against the taxpayer claiming the exemption. McNamara v. Central *924 Marine Serv., Inc., 507 So.2d 207 (La. 1987); LP & L v. The Parish School Board of the Parish of St. Charles, et al., 597 So.2d 578 (La.App. 5th Cir.1992), writ denied 604 So.2d 1316 (La.1992). The Department's auditor found no exemption certificate in the record, as per Section 305.36(C)(1), for the audit period. The record indicates Bamma did apply for an exemption certificate, but this was not until after the audit period. Because exemptions from taxation must be strictly construed, we hold that the exemption would apply to only those transactions entered into after Bamma acquired the exemption certificate, none of which are a subject of this suit. Therefore, Bamma cannot claim an exemption from payment of the initial sales taxes.
Bamma's next contention is that it is due a refund of all lease taxes paid after 1985 because it paid these taxes under protest and those taxes were not due. Because we have held that both the sales taxes and the lease taxes were properly due the state, and that the exemption in Section 305.36 pertains only to the sales tax, this argument has no merit. Likewise, Bamma's contention it is entitled to various tax credits is without merit.
Finally, Bamma asserts the unconstitutionality of LSA-R.S. 47:1486, as being violative of Art. 7, Section 3 of the La. Const. of 1974, in that its prohibition of Court review of Board decisions prevents a complete and adequate remedy in tax matters.
LSA-R.S. 47:1486 reads:
An action of the board rejecting or refusing to approve any claim under this Part may not be appealed to the courts. However, nothing contained in this Part shall deny a claimant whose claim has been rejected by the board the right to petition the legislature for permission to sue on the claim in a court of proper jurisdiction.
It does not specifically address taxation refund and credit suits.
It appears that Bamma's suit for refund and credits has proceeded under LSA-R.S. 47:1431 et seq., which provides:
Whenever a taxpayer is aggrieved by an assessment made by the collector, or by the collector's action or failure to act on a claim for refund or credit of an overpayment, such taxpayer may appeal to the board for a redetermination of the assessment or a determination of the alleged overpayment, by filing a petition with the board within the respective periods set forth in R.S. 47:1565, 47:1566 and 47:1625.
Section 1434 provides judicial review in the district court of decisions by the Board. In the instant case, Bamma has enjoyed two full appeals to the district court of the Board's decision, and has continued the appellate process in this Court. It is hard to see how Bamma argues that they have not had full court review of the Board's assessment. In this case, Bamma has clearly had full judicial review of its case, and its invocation of Section 1486 is clearly erroneous. Therefore, we need not decide the constitutionality of LSA-R.S. 47:1486, as this Court does not believe that statute has ever figured in this case.
Accordingly, for the reasons herein assigned, the district court's judgment is affirmed and the matter remanded to the Board of Tax Appeals for recomputation of the assessment [eliminate the missing leases], interest and penalties and collection of the taxes. All costs of this appeal are taxed against appellant.
JUDGMENT AFFIRMED; CASE REMANDED.
GRISBAUM, J., dissents with reasons to follow.
GRISBAUM, Judge, dissenting with written reasons.
On appeal, we are asked to characterize 45 written contracts as either sales or leases, the consequence of which affects appellant's tax liability. In order to have a contract of sale or lease, there must be a thing (the object of the contract), price and consent. La.Civ.Code arts. 2439, 2670. Both a contract of sale or lease of an automobile may be written or oral. La.Civ.Code arts. 2441, 2683. Where there is a written contract, interpretation of the contract must be sought within the four corners of the document. See Billingsley v. Bach Energy Corp., 588 So.2d 786 (La.App. 2d Cir.1991).
*925 The record before us includes 45 written contracts. However, 32 of these 45 contracts are incomplete in that only the first page of the contract is present. I am of the opinion we cannot address the merits of this appeal based on incomplete or partial contracts. In reviewing a written contract, we are to look at the entire contract. See La.Civ.Code art. 2050. When several contracts are involved, as in this case, each contract must be reviewed independently. When an entire contract is not presented to us on appeal, we cannot adequately review the matter, and we certainly cannot characterize the contract as a sale or a lease.
The majority seems to address this problem only in passing by stating the parties' attorneys have agreed to accept the contents of the record as the true representation of documents introduced at the original hearing. While the parties may agree to go forward absent complete contracts, it does not change the fact we cannot responsibly review and characterize a contract knowing there is language which is not before us.
In the arena of motion for summary judgments, this Court has had a long standing policy of not accepting partial depositions as receivable evidence. Likewise, I do not see how incomplete contracts can constitute receivable evidence in an appeal that deals solely with the contents of such contracts. While I am cognizant of the fact the parties are on appeal for the third time in light of two previous remands for problems with the record, I feel this matter must be remanded to obtain the complete contracts, which we are asked to characterize, before we can address the merits. For these reasons, I must dissent from the majority.
NOTES
[1] We have used the figures supplied in appellee's brief, p. 1. We note that they have incorrectly added the total assessment as $25,932.86 and have also incorrectly reported the balance owed as $23,135.39. In this opinion, we have corrected the addition errors.
[2] Bamma Leasing Co., Inc. v. State, 556 So.2d 149 (La.App. 5th Cir.1990).
[3] These leases and balloon payments were to Valco ($2,450.00), Duckett ($10,800.00), Teles ($6,000.00), Holly $16,000.00), *Ellsworth ($15,000.00), Warren ($19,667.00), O'Rourke/Johnson ($9,000.00), Sylvester ($14,000.00),* Hundley ($10,000.00), Ratliff ($10,000.00),* Harris ($12,000.00),* Jones ($6,800.00), and *Siekinen ($15,000.00).

*These leases also charged a mileage reimbursement.
[4] Canizaro (Lincoln), Canizaro (Dodge), Planning & Transportation (two Chryslers), Gauthier, Gottsegen (Mercury), Gottsegen (Volkswagen), Selph, Pollack, Scheuerman, Hammer, Shames (Mercedes), Shames (Oldsmobile), Hamsa, Gottsegen (Mercedes).
[5] See footnote 3.
[6] See footnote 4.