558 So.2d 1235 (1990)
Charles A. O'NIELL, Jr.
v.
LOUISIANA POWER & LIGHT COMPANY.
No. 89 CA 1551.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
Charles A. O'Niell, Jr., in pro. per.
J. Wayne Anderson, Monroe & Lemann, New Orleans, for defendant-appellee Louisiana Power & Light Co.
Before COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Plaintiff, an oil producer, takes this appeal from a summary judgment rendered in favor of defendant, a public utility, dismissing plaintiff's action for declaratory judgment on five contracts. Appellant argues that the trial court's granting of summary judgment was in error because "the case is alive with material factual issues."
We find the trial court's decision not to consider the factual issues correct for two reasons: first, the trial court lacked jurisdiction to make the requested factual determinations; second, the extrinsic evidence which appellant claims he would have presented during his day in court would *1236 have been inadmissible, given the specific contracts involved.

FACTUAL BACKGROUND
Plaintiff, Charles A. O'Niell, Jr., operates a number of oil wells located in Lafourche Parish, Louisiana. Plaintiff entered into five electric service agreements with defendant, Louisiana Power & Light Company (LP & L), for the purpose of providing electric service to some of his oil wells. At the time the agreements were made LP & L did not have facilities of adequate capacity and suitable phase and voltage adjacent to the wells to be served.
Each contract specifies two components of the price of electric service. The first component is a rate per unit of electricity used. Each of the five contracts ties into a particular "official" rate schedule; with each successive rate schedule, the kilowatt-hour rate for electricity is changed, but otherwise the rate schedules for the five contracts are the same. "Official" rate schedules come into being when a public utility, such as LP & L, files a proposed rate schedule with the Louisiana Public Service Commission (LPSC). See LSA-R.S. 45:1163.1 The schedule does not become official unless it receives LPSC's approval. See LSA-R.S. 45:1163.
The second component of the price in each of the five contracts under consideration is a monthly minimum charge which is imposed on the customer regardless of usage of electricity or a monthly minimum charge coupled with a facilities charge.[1] A public utility is allowed to make these charges to recover costs associated with providing special facilities to new locations; the charges are also known as "line extension fees." LP & L's "Small General Service Rate Schedule GS-1Q" provides:
Where facilities of adequate capacity and suitable phase and voltage are not adjacent to the premises to be served, Company may, at its option, require a contribution, higher minimum bill, facilities charge, or other compensation to make service available.
Plaintiff has no quarrel with the rates he pays for the electricity he uses. Nor does he challenge LP & L's authority to charge the line extension fees during the initial terms of the contracts. Instead, plaintiff's challenge focuses upon the continuation of the line extension charges during extensions of the contracts subsequent to the initial terms. The crux of plaintiff's claim is that the public utility is charging twice (or more often depending upon the number of times the initial term is extended) for the one expenditure it incurred to extend the lines to his property. He contends that the continuation of the line extension charges beyond the initial term of the contract violates the rate schedule approved by the LPSC by exceeding the allowable charges for electricity consumed. Plaintiff filed a declaratory judgment action in district court, urging the court to "re-write" the contracts to the extent that they would conform to the rate schedules for electricity usage, by eliminating the minimum charges and the facilities charges for the second and subsequent terms of the agreements.
Each contract in question provides that the minimum charges shall be paid by the customer "during the term of this Agreement or any extension hereof." The two contracts which contain provisions for a facilities charge in addition to minimum charges provide that "said facilities charge shall be paid monthly during the term of, and any extension of, the electric Service Agreement...."
Section 6 of each contract provides for extension of the contract as follows:
This Agreement shall bind the Company and the Customer from (date) or the date upon which service is first made available, whichever is earlier, to (date) *1237 and thereafter for similar periods unless terminated by written notice given by one party to the other not more than six (6) months nor less than three (3) months prior to the expiration of the original term or any extension thereof.
Absent written notice of termination, each contract is self-extending for identical terms: the three-year contract for another three years; the ten-year contract for another ten years.

JURISDICTION
When the defendant LP & L filed a motion for summary judgment, the trial court was presented with the threshold issue of whether it had jurisdiction. The defendant argued that since plaintiff's cause of action was essentially an attempt to receive better electric rates than those approved by LPSC pursuant to the contracts with defendant, LPSC had exclusive jurisdiction of the dispute. The trial court resolved the issue by a bifurcation, in essence, of the plaintiff's claim. The trial court refused to reach the issue of the reasonableness or fairness of the minimum charges and the facilities charges in the extended contracts. The trial judge reasoned that the district court did not have jurisdiction of that issue. We agree. When a claim is stated that is essentially a dispute about the furnishing of services or the cost of the services, the claim is beyond the jurisdiction of the trial court because the legislature has empowered LPSC to establish rates. LSA-R.S. 45:1164; Edwards v. Louisiana Power & Light Co., 439 So.2d 442 (La.App. 1st Cir.1983).
Plaintiff contends that "the issue on which this case turns" is whether the minimum charges and facilities charges in the extended terms of the contracts is in violation of the rate schedule approved by the LPSC, specifically LP & L's Small General Service Rate Schedule GS-1Q Code # 5. Plaintiff complains that the trial court did not address this issue. As we understand it, plaintiff's position is that the rate schedule does not authorize these charges beyond the initial terms of these contracts. Based upon his theories of accounting and finance, plaintiff essentially contends that if defendant is allowed to collect these charges for the extended terms of the contracts the defendant will recoup substantially more than it expended in building the facilities to furnish service to plaintiff. Plaintiff, in effect, is questioning the reasonableness and fairness of these charges. Since the rate schedule clearly provides that the "... Company may, at its option, require a contribution, higher minimum bill, facilities charge, or other compensation to make service available ...," we conclude that the minimum charges and facilities charges during the extended terms of the contracts are authorized by the LPSC approved rate schedule. Accordingly, the trial court's ruling that he was without jurisdiction to alter the rates or charges established by the LPSC is correct. La. Const. art. IV, § 21; LSA-R.S. 45:1163, 1164.

CONTRACT INTERPRETATION
With the issues thus limited, the trial court proceeded to interpret the five contracts in question. The trial court limited its consideration to the four corners of the contracts and concluded, as a matter of law, that the defendant was entitled to judgment. The judge's considerations and conclusion were in accord with this court's recent opinion in a similar contractual dispute, Borden v. Gulf States Utilities Co., 543 So.2d 924 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989). Although that case proceeded to trial on the merits, the language of the opinion pertinent to contract interpretation applies equally to an appeal from a summary judgment.
[T]he rules of interpretation establish that when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. LSA-C.C. art. 2046, comment (b); Cashio v. Shoriak, 481 So.2d 1013 (La.1986).
The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848; Tauzin v. Claitor, *1238 417 So.2d 1304 (La.App. 1st Cir.1982), writs denied, 422 So.2d 423 (La.1982). Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. (Citations omitted.)

. . . . .
Whether a contract is ambiguous or not is a question of law. Myers v. Myers, 532 So.2d 490 (La.App. 1st Cir. 1988); Aycock v. Allied Enterprises, Inc., 517 So.2d 303 (La.App. 1st Cir. 1987), writs denied, 518 So.2d 512, 513 (La.1988).... [W]hen appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. Conoco, Inc. v. Tenneco, Inc., Tennessee Gas Pipeline Company, 524 So.2d 1305 (La.App. 3rd Cir.1988), writ denied, 525 So.2d 1048 (La.1988). In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. (Emphasis supplied.)
543 So.2d at 927-928.
We find that the trial court in the instant case correctly determined that the provisions of the contract imposing the minimum charges and the facilities charges during "any extension" of the contracts are clear and unambiguous. Consequently, the plaintiff was not entitled to present extrinsic evidence concerning the minimum charges and the facilities charges.
Accordingly, we affirm the judgment of the trial court granting defendant LP & L summary judgment as a matter of law. Appellant is cast for costs of this appeal.
AFFIRMED.
NOTES
[1] A breakdown of the contracts' charges is as follows: a. three-year contract commencing October 1, 1982$90.00 minimum charge; b. three-year contract commencing October 1, 1982$143.00 minimum charge; c. three-year contract commencing January 7, 1985$190.00 minimum charge; d. ten-year contract commencing April 25, 1980$10.00 minimum charge and $134.62 facilities charge; e. ten-year contract commencing January 1, 1984$17.80 minimum charge and $214.78 facilities charge.