760 So.2d 1193 (2000)
Calvin J. TALLEY and Mary B. Talley
v.
BLUE CROSS BLUE SHIELD OF LOUISIANA.
No. 99-1974.
Court of Appeal of Louisiana, Third Circuit.
May 3, 2000.
*1194 Paul J. Hebert, Lafayette, Counsel for Defendant-Appellant, Blue Cross Blue Shield of Louisiana.
J. Minos Simon, Bradley D. Watts, Lafayette, Counsel for Plaintiffs-Appellees, Calvin J. Talley and Mary B. Talley.
Before DOUCET, C.J., COOKS and DECUIR, Judges.
DECUIR, Judge.
Calvin and Mary Talley filed suit against Blue Cross/Blue Shield of Louisiana seeking payment of medical benefits, totaling $96,024.02, under a health insurance policy. They also sought penalties and attorney's fees for the arbitrary and capricious failure to pay the claim. Blue Cross denied benefits based on its contention that Mrs. Talley's cancerous tumor found on the spine was in fact metastatic breast disease, a condition specifically excluded by a rider attached to the policy. Both the Talleys and Blue Cross moved for summary judgment on the coverage and penalties issues.
In a thorough and well reasoned decision, the trial court ruled in favor of the plaintiffs and found coverage under the policy. He did not find the actions of Blue Cross to be arbitrary and capricious, however, and declined to award penalties and attorney's fees. Blue Cross has appealed the determination of coverage, and the Talleys answered the appeal, contending the trial court erred in failing to award penalties and attorney's fees. Affirming the trial judge's ruling, we quote in extenso from his reasons for judgment:
This litigation arises out of a contractual dispute between Plaintiffs and their health insurer. It is undisputed that Mrs. Talley was diagnosed with breast cancer in 1988 and underwent surgery to remove her left breast. It is further undisputed that subsequently, Plaintiffs entered into a contract of insurance with the Defendant for comprehensive major medical coverage, which policy became effective on April 14, 1994. The policy contained a rider exclusion which excludes "malignant neoplasms of breast; treatment for and complications therefrom."
Thereafter, on or about March 28, 1996, Mrs. Talley was diagnosed with a spinal tumor for which she sought and received medical treatment. Plaintiffs submitted numerous medical bills for payment and/or reimbursement for this treatment and the Defendant began making payments. After paying certain of the submitted claims, the Defendant ceased making payments on Plaintiffs' claims and, in addition, sought reimbursement of payments previously made to health care providers. In so doing, the Defendant relied on the aforementioned exclusion and contended that the spinal tumor was actually breast cancer that metastasized to the spine.
The only justiciable controversy before the Court is whether the exclusion *1195 relied upon by the Defendant, excluding "malignant neoplasms of breast; treatment for and complications therefrom," is applicable to Mrs. Talley's spinal cancer.
It is well settled that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts as set forth in the Civil Code. Crabtree v. State Farm Insurance Co., 93-0509 (La.2/28/94), 632 So.2d 736. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. article 2045. If the words of an insurance policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent and the agreement must be enforced as written. LSA-C.C. article 2046. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. LSA-C.C. article 2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. LSA-C.C. article 2053.
Regarding the interpretation of an exclusion in an insurance policy, the Louisiana Supreme Court provided in Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991):
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Capital Bank & Trust Co. v. Equitable Life Assurance Society, 542 So.2d 494 (La.1989); Albritton v. Fireman's Fund Insurance Co., 224 La. 522, 70 So.2d 111 (1953). Equivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured has no voice in the preparation. 13 J. Appleman, Insurance Law and Practice § 7427 (rev. ed.1976). If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Carney v. America Fire & Indemnity Co., 371 So.2d 815 (La.1979); W. McKenzie & H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice § 4 (1986). The judicial responsibility in the interpretation of an insurance policy is the determination of the common intent of the parties. W. McKenzie & H. Johnson, supra.

Additionally, the burden is on the insurer to prove the applicability of an exclusionary clause in a policy of insurance. Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1 Cir.1984).
With these principles firmly in mind, this Court will now address the insurance contract interpretation question in this case. The language of the insurance policy exclusion at issue purports to exclude "malignant neoplasms of breast; treatment for and complications therefrom." The Defendant contends that the subject exclusionary language is applicable to all Mrs. Talley's claims relating to her spinal cancer.
The testimony of the Defendant's representative establishes that the Defendant itself cannot define the terms of the exclusion relied upon and cannot make clear to an insured what complications are excluded under the policy. The Defendant's representative, a physician, testified that there were potentially hundreds of complications from breast cancer and that he could not name them all and did not believe anyone could. He testified that he could possibly name "maybe 50 percent" of such complications. He testified that the term "complication" is not a standardized medical term.

*1196 The law mandates that an exclusion be definable with a reasonable degree of certainty, and that the terms of the exclusion must be such that it is clear who is insured and what is excluded. Furthermore, it is the duty of the insurer to clearly express its limitations. Any doubts as to coverage must be construed against the drafter of the policy and in favor of coverage.
In this case, by the Defendant's own testimony, the phrase "complications therefrom" cannot be defined with any degree of certainty whatsoever. The Defendant's own expert could only name "maybe 50 percent" of the complications resulting from breast cancer. Accordingly, this Court finds that the subject exclusion does not make clear what is excluded and, for that reason, is ambiguous. Therefore, the exclusion must be construed in favor of coverage.
Further, it is well-settled that technical, medical terms must be interpreted in their plain, ordinary, and popular sense. As such, the policy in question must be interpreted to afford coverage because the plain, ordinary, and popular sense to the term "malignant neoplasms of breast" only encompasses cancer which occurs in the breast, not cancer which is located in the spine. Consequently, the exclusion is ambiguous as its terms, when taken in their plain, ordinary and popular sense, would not alert a policyholder that cancer which originates in the breast and which manifests itself eight years later in the spine would be excluded from coverage.
This Court adopts the reasoning of the Supreme Court in Seguin v. Continental Service Life & Health Ins. Co., 230 La. 533, 89 So.2d 113 (1956). In that case, the Court articulated that it must be remembered that a contract of insurance is prepared by the insurance company, and that the company contracts, through its agents, with ordinary laymen who do not know the technical meaning of medical words and phrases. No doubt this is one of the reasons why the courts, in construing the meaning of medical words and phrases found in health, accident and sickness policies, have consistently said that such words and phrases should be understood in their plain, ordinary and popular sense rather than in their scientific sense. Id. at 115.
Finally, although the Court finds that exclusion relied upon by the Defendant is ambiguous, the Court is not inclined to grant Plaintiffs' request for penalties and attorney fees. The Court finds that the Defendant had just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, to deny payment and/or reimbursement of the submitted claims. Dr. James Gengelbach reviewed the relevant policy and medical records of Mrs. Talley and it was his professional medical opinion that Mrs. Talley's condition and treatment fit within the exclusion. The Court concludes that, based upon Dr. Gengelbach's medical opinion, the Defendant had a good-faith basis for denying payment and/or reimbursement on Mrs. Talley's claims; and while, perhaps this was a "close call," the Defendant was not arbitrary and capricious.
Our review of the record supports the trial court's decision. The trial judge correctly focused not on the scientific meaning of the exclusion rider, but rather, on the common and ordinary meaning of the language used in the exclusion. Accordingly, it is not determinative that an analysis of Mrs. Talley's spinal tumor shows that it was very similar to, and probably was a metastasis of, her original breast cancer. What is relevant is simply what the exclusionary language means in its ordinary and popular sense.
On the question of penalties and attorney's fees, we agree with the trial judge's conclusion that Blue Cross was not arbitrary and capricious in denying benefits to Mrs. Talley. Blue Cross initially paid benefits, and continued to do so while *1197 it investigated the claim. Only after the top ranking medical director had researched the claim were benefits terminated and reimbursement sought. Denial of the claim was founded on competent medical evidence, albeit insufficient legal analysis. Consequently, while we have found that the prevailing legal standards mandate coverage, we do not find penalties and attorney's fees to be warranted in this case.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Blue Cross/Blue Shield of Louisiana.
AFFIRMED.