799 So.2d 507 (2001)
Jeanette ARMAND, et al.,
v.
William BELT, Sheriff, et al.
No. 01-0051.
Court of Appeal of Louisiana, Third Circuit.
May 16, 2001.
Writ Denied October 5, 2001.
Alton T. Moran, Baton Rouge, LA, Counsel for Plaintiffs/Appellees Jeanette Armand, Barton Armand, Craig Armand.
Albin A. Provosty, Provosty, Sadler, de-Launay, Fiorenza, & Sobel, Alexandria, LA, Counsel for Defendant/Appellant Clarendon National Ins. Co.
Rodney M. Rabalais, Marksville, LA, Counsel for Defendants/Appellees William O. Belt, Timmy Ducote, Joseph Murray, John J. Guillory.
Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, and JIMMIE C. PETERS, Judges.
PETERS, J.
Jeanette, Craig, and Barton Armand brought this action to recover damages arising from a November 3, 1998 automobile accident in Avoyelles Parish, Louisiana, in which Harold Armand was killed and Jeanette sustained severe personal injuries. Harold was the husband of Jeanette and the father of Craig and Barton. In their suit, the plaintiffs named several defendants, including William Belt, Sheriff of Avoyelles Parish; Deputy Sheriff John Guillory; and Clarendon National Insurance Company (Clarendon). In this appeal, Clarendon seeks reversal of a partial summary judgment holding that its insurance policy provided liability insurance coverage for the accident. For the following reasons, we affirm the trial court's grant of the summary judgment.

DISCUSSION OF THE RECORD
There is no dispute concerning the facts of the accident of November 3, 1998. Harold was killed and Jeanette sustained injuries when a twenty-foot handmade trailer became detached from the truck pulling *508 it, traveled into the opposite traffic lane of Louisiana Highway 29, and struck the vehicle occupied by the Armands. Deputy Guillory was operating the 1986 Chevrolet pickup truck from which the trailer became detached and, at the time of the accident, was in the course and scope of his employment with Sheriff Belt.
Clarendon insured Sheriff Belt through a commercial automobile liability insurance policy. The truck driven by Deputy Guillory at the time of the accident was specifically listed as an insured "auto" under the policy. However, because the trailer involved in the accident was not specifically listed for coverage under the policy, Clarendon denies that the policy provides liability coverage for this particular accident. This appeal arises because the trial court granted the plaintiffs' motion for partial summary judgment on the coverage issue and designated the judgment as a final, appealable judgment pursuant to La.Code Civ.P. art. 1915. Clarendon asserts in its appeal that the trial court erred in granting the summary judgment because the policy does not provide coverage for the trailer which struck the Armand vehicle.

OPINION
Appellate courts review summary judgments de novo under the same criteria applied by the trial court in determining whether summary judgment is appropriate. Cormier v. Albear, 99-1206 (La.App. 3 Cir. 2/2/00); 758 So.2d 250. A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). The basic facts in this litigation are not in dispute, and the only issue before us is whether the Clarendon policy provides coverage for this particular accident.
The contractual relationship created between the parties to an insurance policy must be evaluated by applying the interpretative rules of contracts as found in the Louisiana Civil Code. Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94); 632 So.2d 736; Talley v. Blue Cross Blue Shield of La., 99-1974 (La.App. 3 Cir. 5/3/00); 760 So.2d 1193, writ denied, 00-1561 (La.8/31/00); 766 So.2d 1278. The interpretative purpose is to determine the common intent of the parties. La.Civ. Code art. 2045. In attempting to determine that common intent, we may not seek a different interpretation "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences." La. Civ.Code art. 2046. Words within a contract "must be given their generally prevailing meaning." La.Civ.Code art. 2047. However, if words of a contract are susceptible of different meanings, we must interpret them in the manner that "best conforms to the object of the contract." La.Civ.Code art. 2048. A single provision of the insurance contract "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. We are required to interpret a doubtful provision "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art. 2053. Additionally, where the doubt created by a contract provision cannot be removed, we must interpret that provision against the party who furnished it. La.Civ.Code art. 2056.
The insurance policy at issue requires Clarendon to "pay all sums [Sheriff Belt] legally must pay as damages because of `bodily injury' or `property damage' to *509 which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a covered `auto'." (Emphasis added). The insurance policy includes a "trailer or semitrailer designated for travel on public roads" as well as "a land motor vehicle" within its definition of "auto." (Emphasis added).
The Clarendon policy provides nine choices from which an insured can select "auto" coverage, and the choices made affect the applicability of other sections of the policy. Sheriff Belt selected three of the nine categories, and only one of the three is applicable to the facts giving rise to this litigation. That category reads as follows:
7= SPECIFICALLY DESCRIBED "AUTOS." Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).
In other words, the policy provides liability coverage for all land motor vehicles and trailers listed in ITEM THREE of the policy Declarations section, as well as for all nonowned trailers if attached to a listed "power unit." ITEM THREE lists over 125 "land motor vehicles" or "power units" and five trailers as covered "autos." The trailer involved in this accident is not one of the five, but it was owned by Sheriff Belt. Clarendon asserts that the failure to list the trailer that struck the Armand vehicle and to pay a premium for it precludes coverage.
In granting the summary judgment, the trial court stated the following:
[W]e have a situation where the sheriff's vehicle is pulling a trailer. The lynch pin or whatever breaks and the trailer comes loose and crosses and causes an accident, the trailer doesn't become motorized on its own, can't cause the accident on its own. It caused the accident because of the use of a covered vehicle. And the use of the covered vehicle is the essential instrument, in this accident. The covered vehicle caused the accident, not the trailer. The accident was caused by [sic] covered vehicle, and certainly, the dislodging of the trailer, then, played the vital role.
But it's my finding that by the use of the trailer with the vehicle, that definitely provides coverage. I don't find a factual issue.
(Emphasis added).
Clarendon argues that the trial court's determination that the accident arose through the use of a covered "auto" (the 1986 truck) is an "over-simplistic interpretation" of the policy and ignores the language concerning attachment of trailers listed in ITEM THREE. Ignoring this exclusionary language, according to Clarendon, would deny it the well-settled right to place reasonable conditions on its policy.
While the trailer was the instrumentality that made contact with the Armand vehicle, the truck was the instrumentality that imparted motion to the trailer so that, upon becoming detached, it was propelled into the wrong lane of travel and ultimately into the Armand vehicle. The use of the truck was essential to creating the hazard that resulted in the accident. Clarendon's policy clearly provides coverage for injuries caused by an accident and resulting from the use of a covered auto. Because the truck was a covered auto and the injuries were caused by an accident and resulted from the use of the truck, the policy provides coverage as a matter of law, regardless of which instrumentality actually made contact with the Armand vehicle. The word "use" is not synonymous with the word "contact." We cannot *510 rewrite the policy to provide coverage only for injuries caused by contact with a covered auto, as Clarendon would have us do. Its policy simply does not go that far.

DISPOSITION
For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Jeanette, Craig, and Barton Armand against Clarendon National Insurance Company. We tax all costs against Clarendon National Insurance Company.
AFFIRMED.