787 So.2d 1182 (2001)
Debra HEWITT, Ind. and on Behalf of her Minor Daughter, Teasha Wilkerson
v.
SAFEWAY INSURANCE COMPANY OF LOUISIANA, et al.
No. 01-0115.
Court of Appeal of Louisiana, Third Circuit.
June 6, 2001.
*1183 Donald R. Brown, Attorney at Law, Alexandria, LA, Counsel for Debra Hewitt, Teasha Wilkerson.
DeWitt T. Methvin, Jr., Attorney at Law, Alexandria, LA, Counsel for State Farm Insurance Company, Catherine Lemoine.
Lauren Gay Coleman, Attorney at Law, Alexandria, LA, Counsel for Debra Hewitt.
Melissa Broussard, Attorney at Law, Lafayette, LA, Counsel for Safeway Insurance Company of Louisiana, Brent Brevelle.
Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, and JIMMIE C. PETERS, Judges.
PETERS, Judge.
State Farm Mutual Automobile Insurance Company (State Farm) appeals a $9,130.90[1] judgment rendered against it in favor of Debra Hewitt on behalf of her minor daughter, Teasha Wilkerson. For *1184 the following reasons, we reverse the judgment and render judgment dismissing State Farm as a party defendant in the litigation.
The accident giving rise to this litigation occurred on October 7, 1998, when Brent J. Brevelle's vehicle struck a vehicle driven by Melissa Dauzat as she exited the Winn-Dixie grocery store parking lot in Marksville, Louisiana. Teasha, who was thirteen years old at the time, was a guest passenger in the Dauzat vehicle, a 1997 Isuzu pickup truck. Ms. Hewitt had driven the truck to the Winn-Dixie store and had allowed Ms. Dauzat to use it to run an errand. In her suit, Ms. Hewitt initially named Mr. Brevelle and his liability insurer, Safeway Insurance Company of Louisiana (Safeway), as defendants. She later amended the suit to name State Farm as an additional defendant, asserting that State Farm provided liability insurance coverage for the 1997 Isuzu pickup truck.
After trial, the trial court awarded Teasha general and special damages, found Ms. Dauzat totally at fault in causing the accident, and held that State Farm provided liability insurance coverage for the accident. In its sole assignment of error on appeal, State Farm asserts that the trial court erred in concluding its liability policy provided coverage for the 1997 Isuzu pickup truck.

OPINION
State Farm does not dispute that it issued a liability insurance policy to Catherine M. Bordelon wherein the 1997 Isuzu pickup truck was listed as the covered automobile. It is also undisputed that Ms. Bordelon was the owner of the truck when the State Farm policy was first issued and that she still held record title to the truck at the time of the accident. However, prior to the October 7, 1998 accident, Ms. Bordelon entered into the following handwritten agreement with Ms. Hewitt:
Lease Purchase
I Catherine M. Bordelone [sic] do hereby Lease purchase one 1997 Green Isuzu Hombre pickup-VIN # 1GGCS1448V8659834, odo. 00009 to Debra S. Hewitt for the amount of 272-80/xx per month plus 80.00 insurance payment for a period of 60 months For a total of 352.80 per mo.
All insurance proceeds will go to Catherine M. Bordelon + Debra S. Hewitt to repair or replace said vehicle.
In the event this agreement falls 45 days delequient [sic] Purchaser Debra S. Hewitt will return said vehicle to Seller Catherine M. Bordelone [sic] and forfiet [sic] all previous payments.
Payment [sic] are to begin July 1, 1997. Ending July 1, 2002 This agreement entered into jointly by:
 /s/ Debra S. Hewitt +
 /s/ Catherine M. Bordelon
 on this day June 26 year 1997
 Debra S. Hewitt DR. Lic # 4238788
 Catherine M. Bordelone [sic] DR. Lic
 # 5233248
 /s/Mancil Galland
 Notary Public
State Farm asserts that the effect of this agreement and the terms of its policy operated to terminate liability coverage for the 1997 Isuzu. We agree.
According to State Farm, this agreement is a conditional sale of the Isuzu, and Ms. Bordelon's action in entering into the agreement terminated its coverage obligations because the policy provided no coverage for a non-owned vehicle operated by someone other than an insured under the policy. The trial court determined that the agreement was not a conditional *1185 sale but a contract to sell. In doing so, the trial court concluded that title had not passed to Ms. Hewitt and State Farm's policy remained in full force and effect. Thus, the task before us is to determine the nature of the June 1997 agreement and its legal effect on the relationship between the parties.
As we recently stated in Armand v. Belt, 01-0051, p. ___ (La.App. 3 Cir. 05/16/01); ___ So.2d ___, ___, 2001 WL 515330, in attempting to interpret the terms of a contract:
[t]he interpretative purpose is to determine the common intent of the parties. La.Civ.Code art. 2045. In attempting to determine that common intent, we may not seek a different interpretation "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences." La.Civ.Code art. 2046. Words within a contract "must be given their generally prevailing meaning." La.Civ.Code art. 2047. However, if words of a contract are susceptible of different meanings, we must interpret them in the manner that "best conforms to the object of the contract." La.Civ. Code art. 2048.... We are required to interpret a doubtful provision "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art. 2053. Additionally, where the doubt created by a contract provision cannot be removed, we must interpret that provision against the party who furnished it. La.Civ.Code art. 2056.
At trial, the litigants stipulated that, if called as a witness, Ms. Bordelon would testify that the agreement was exactly as set forth in the handwritten document. Ms. Hewitt testified that she "lease-purchased" the vehicle from Ms. Bordelon and considered the vehicle as her own. In fact, in her initial suit against Mr. Brevelle and Safeway, Ms. Hewitt sought to collect for the cost of repair of "her vehicle" in the accident. However, she presented no evidence concerning the amount of damage to the vehicle. This testimony, the stipulation, and the agreement itself constituted all the evidence presented on the interpretation issue.

Contract to Sell
Louisiana Civil Code art. 2623 defines a contract to sell as follows:
An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to sell. Such an agreement gives either party the right to demand specific performance.
A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.
Such a contract does not transfer ownership of the property involved. Rourke v. Cloud, 398 So.2d 57 (La.App. 3 Cir.1981). Additionally, a contract to sell does not give the party seeking to purchase the property the right of possession of the property unless specifically provided for in the contract. Id.
In reaching the decision that the June 1997 agreement was a contract to sell, the trial court emphasized the forty-five-day forfeiture provision of the agreement. However, it is clear from a review of the entire agreement, the actions of the parties immediately after the agreement execution, and the evidence presented at trial that the parties contemplated something more than an agreement to sell the vehicle in the future. Ms. Hewitt took possession immediately after execution of the agreement and treated the vehicle as her own *1186 from that point forward. Thus, we find that the trial court erred in its conclusion that the agreement was a contract to sell.

Conditional Sale Agreement
State Farm argues that the June 1997 agreement is a conditional sale agreement, and as such, ownership of the Isuzu transferred immediately to Ms. Hewitt. According to State Farm, once Ms. Hewitt became the owner of the vehicle, its obligations under the policy issued to Ms. Bordelon ceased to exist. State Farm bases this assertion on the provision of its policy which provides that "[n]o change of interest in [the] policy is effective unless [State Farm] consent[s] in writing." In this instance, State Farm did not consent to any transfer of ownership to Ms. Hewitt in writing, and did not consent to insuring Ms. Hewitt rather than Ms. Bordelon under the policy.
The transfer of ownership of property in Louisiana takes place "as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." La. Civ.Code art. 2456. Louisiana has declined to recognize the common law concept of conditional sale of movables where the vendor attempts to retain ownership until the purchase price is paid in full. Security Ctr. Protection Servs., Inc. v. All-Pro Sec., Inc., 97-1070 (La.App. 4 Cir. 11/26/97); 703 So.2d 806. We addressed the treatment of such contracts in Haymon v. Holliday, 405 So.2d 1304, 1307 (La.App. 3 Cir.1981) as follows:
Accordingly, if the parties have agreed on the thing and the price, the sale is complete. The parties cannot validly agree that the seller will retain title to the object until payment of the purchase price, as Louisiana does not recognize the common law conditional sales contract for movable property. Roy O. Martin Lumber Co. v. Sinclair, 220 La. 226, 56 So.2d 240 (1951). The effect of this law is that the seller is divested of ownership as soon as the buyer is unconditionally bound to pay the purchase price, and such contractual attempts to retain title until payment are of no effect.
In other words, an attempted conditional sale agreement is simply "treated as a credit sale in which ownership of the object of the sale passes at the time the contract is entered into." Succession of Dunham, 408 So.2d 888, 896 (La.1981).
Additionally, Louisiana has recognized the difference between a lease with an option to purchase and a conditional sale disguised as a lease.
The distinction between a valid "lease with option to purchase" and a disguised "conditional sale" is that in the former, there is an option to give additional consideration in order to purchase the leased item at the end of the contract term, while in the latter, there is an obligation to pay the full price regardless of whether the option is exercised or not. Pastorek v. Lanier Systems Co., 249 So.2d 224 (La.App. 4th Cir.1971).
A contract by which a party binds himself to pay in installments a certain sum for the use of a thing, with the privilege of becoming owner thereof upon paying a further sum, for which he has not bound himself absolutely, is simply a lease with an option to purchase, and is not a sale. An alleged lease, in which at the end of the term the lessee is to become owner of the thing leased, in consideration of the rent to be paid, is in fact a sale translative of the property from its very inception. Byrd v. Cooper, 166 La. 402, 117 So. 441 (1928).
Bamma Leasing Co., Inc. v. Secretary, Dept. of Rev. and Taxation, 93-881, pp.4-5 (La.App. 5 Cir. 9/14/94); 646 So.2d 917, *1187 920, writ denied, 94-2505 (La.12/9/94); 648 So.2d 380.
A lease contract is "a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing, or his labor, at a fixed price." La.Civ.Code art. 2669. However, it is clear that the June 1997 agreement contemplated that Ms. Bordelon would eventually transfer title to the 1997 Isuzu to Ms. Hewitt upon compliance of the payment schedule contained in the agreement without any further consideration.
Despite its use of "lease purchase" language, we find that the June 1997 agreement did immediately transfer ownership of the 1997 Isuzu to Ms. Hewitt. Although the price was not paid in full at that time, the agreement established a fixed price [$352.80 per month for sixty months] for the thing purchased [the 1997 Isuzu pickup truck] as required by La.Civ. Code art. 2456. Once ownership of the vehicle was transferred to Ms. Hewitt, State Farm's obligations to its insured, Ms. Bordelon, ceased to exist. Therefore, we conclude that the trial court erred in finding that the State Farm policy provided liability coverage for the accident sued upon.
We recognize that the Louisiana Lease of Movables Act, La.R.S. 9:3301 et seq., "recognize[s] as valid and enforceable in this state" those "financed leases, which [had] previously been construed as conditional sales transactions." La.R.S. 9:3302. However, this recognition does not affect the result of this opinion as the provisions of the Act merely provide that the lessor under a properly perfected financed lease retains full legal and equitable title and ownership to the leased equipment until the lessee exercises his option or complies with his obligation to purchase the leased equipment from the lessor as provided for under the lease agreement. La.R.S. 9:3310(B). The Act has no application to any question of underlying insurance coverage. Assuming, for purposes of this opinion, that Ms. Bordelon retained title and ownership to the Isuzu, State Farm's policy would still afford no liability coverage for the accident because it specifically states that it provides no coverage for an insured vehicle rented or leased to another.

DISPOSITION
For the foregoing reasons, we reverse the trial court judgment rendered in favor of Debra Hewitt on behalf of her daughter, Teasha Wilkerson, and against State Farm Mutual Automobile Insurance Company. We render judgment in favor of State Farm Mutual Automobile Insurance Company and against Debra Hewitt on behalf of her daughter, Teasha Wilkerson, dismissing her demands against State Farm Mutual Automobile Insurance Company with prejudice, and at her cost.
REVERSED AND RENDERED.
SAUNDERS, J., dissents and assigns written reasons.
SAUNDERS, J. Dissenting.
I respectfully disagree with the majority opinion. In this instance, I would have affirmed the trial court's decision, but on different grounds.
On appeal, State Farm urges that the trial court erred in holding that the policy of insurance issued to Ms. Lemoine covered the accident which took place on October 7, 1998. State Farm bases this argument on the premise that the lease purchase agreement between Ms. Hewitt and Ms. Lemoine must be treated as a sale rather than a contract to sell. Accordingly, because State Farm argues that the lease purchase agreement must *1188 be treated as a completed sale, it argues that Ms. Lemoine's policy for the 1997 Issue Hombre pickup truck does not cover the accident because she no longer owns the automobile. Therefore, reaching the issue of whether the trial court's finding of coverage was proper, the issue of the ownership of the Isuzu Hombre must necessarily be reached.
In the lower court, the trial judge based his determination on his finding that the lease purchase agreement between Ms. Lemoine and Ms. Hewitt constituted a contract to sale. The following dialogue concerning the status of the lease purchase agreement took place at trial:
BY MR. METHVIN:
There's no such thing in Louisiana as a lease-purchase agreement.
BY THE COURT:
Exactly. Right.
BY MR. METHVIN:
But the courts have consistently considered a sale with a vendor's lien, and......(Interruption)
BY THE COURT:
It says, "In the event that this agreement falls forty-five days...." I see some post dated conditions in this arrangement, and I view it as a contract to sell rather than a contract of sale, don't you?
BY MR. METHVIN:
No, sir. ....(Interruption)
. . . .
BY THE COURT:
Codal animal of that nature..... ".... one Green Isuzu." They describe it. And they set forth the terms. "All the insurance proceeds will go to Catherine M. Bordelon and Debra S. Hewitt to repair or replace said vehicle. In event this agreement falls 45 days delinquent, Debra Hewitt will return said vehicle to seller and forfeit all previous payments. Payments are to begin....." It appears to me that upon the lapsing of a sixty month period, and upon conditions precedent of payment of lawful sums and the insurance premiums, then a sale would have taken place. Isn't that a contract to sell rather than a contract of sale?
BY MR. METHVIN:
Judge, all I can tell you is what the courts of Louisiana say it is; a sale with security interest in advance of a sale. I don't make the laws; I don't even interpret it.
. . . .
BY MR. METHVIN:
And I haven't found a single case that says anything else.
. . . .
BY THE COURT:
I view the document as a contract to sell. I do not see it as meeting the criteria of a price, a thing, and a consent to transfer ownership. I just don't see those three elements here.
BY THE COURT:
I've looked at it and thought about it throughout the testimony, and I really view it as a contract to sell, at some point in the future, if the parties, at that point, would have entered into a meeting of the minds of having met all the conditions in this document they drew, rather than a contract of sale. And with that, I make the legal conclusion, which certainly may be reversed on appeal, that there is coverage here ...
A contract to sell is defined in La.Civ. Code art. 2623, which states in pertinent part:
An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon *1189 performance of some obligation by either party, is a bilateral promise of sale or contract to sell. Such an agreement gives either party the right to demand specific performance.
A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.
Such contract does not transfer ownership, and it does not give the grantee a right of possession unless it specifically so provides. Rourke v. Cloud, 398 So.2d 57(La.App. 3 Cir.1981); See La.Civ.Code art. 2623, comment (c).
Upon a review of the language of the lease purchase agreement and of the evidence adduced at trial, it is evident that the trial court erred in finding the lease purchase agreement to be a contract to sell. When the courts interpret contracts, they seek to determine the common intent of the parties. See La.Civ.Code art. 2045. If the words of a contract are clear, explicit, and led to no absurd consequences, the courts may make no further interpretation in search of the parties' intent. La.Civ. Code art. 2046. When the terms of a contract are susceptible to more than one interpretation, the contract is ambiguous, and parol evidence may be used. McCrory v. Terminix Service Co., Inc., 609 So.2d 883 (La.App. 4 Cir.1992). Whether a contract is ambiguous is a question of law; on review we must determine whether the trial court's interpretation is legally correct. O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235 (La.App. 1 Cir. 1990).
Here, the words of the contract are clear. The parties obviously intended to enter into an immediate lease purchase agreement which would eventually result in a transfer of the ownership of the 1997 Green Isuzu Hombre pickup from Ms. Bordelon to Ms. Hewitt. This is evidenced by the present tense of the verb used in the following provision, "I Catherine M. Bordelon do hereby lease purchase one 1997 Green Isuzu Hombre pickup ..." (Emphasis added.) Had the parties viewed this as a contract to sell, they would have indicated that their contract would be completed sometime in the future. It appears that the trial court based its determination on the language of the lease purchase agreement concerning the forfeiture of the truck should payments become 45 days delinquent. This language is indicative of a conditional sale rather than a contract to sell. The obvious difficulty for the trial court was in determining what to do with an agreement that did not neatly fit into a category of sales contracts readily recognized under traditional Louisiana jurisprudence.
Finding error in the trial court's interpretation, an examination of State Farm's argument that the agreement is a conditional sale, and therefore, should be treated as a perfected sale must be made. State Farm asserts that the language of the lease purchase agreement and testimony at trial show that the parties intended the transaction between them to be a completed contract which conveyed ownership. Specifically, State Farm points to the following dialogue:
Q. Ms. Hewitt, my name is DeWitt Methvin and I represent State Farm Insurance Company. You had purchased this truck from Catherine Bordelon Lemoine, had you not?
A. I lease-purchased it from her, yes, sir.
Q. You referred to it as `my truck' and... (interruption)
A. Yes, sir.
Q. And you kept it at your house?
A. Yes, sir. I paid the notes and the insurance.

*1190 Q. You paid the notes on it and your husband drove it and used it as your family automobile, did you not?
A. Yes, sir.
Q. And that was the situation at the time of this accident?
A. Yes, sir.
Q. Did you finally pay the truck out?
A. I did. The truck was wrecked and we still haven't gotten everything situated on that.
Q. Okay. Thank you, ma'am. That's all the questions I have."
In addition to Ms. Hewitt's testimony, State Farm also points to Louisiana jurisprudence which has interpreted conditional sales of movables, such as lease purchase agreements, as impermissible under Louisiana law. A conditional sale or a lease purchase agreement is a contract in which the buyer pays the purchase price to the seller in installments. Huey L. Golden, Comment, The Conditional Sale in Louisiana Jurisprudence: Anatomy of a Synedoche, 54 La. L.Rev. 359 (1993). The buyer receives possession and the right to use the thing at the moment he enters the contract; however, the seller retains title to the thing until the final payment is made. Id., citing Saul Litvinoff, Sale and Lease in the Louisiana Jurisprudence 111 (2d rev. ed. 1986). According to prior jurisprudence, Louisiana does not recognize common law conditional sales contracts for movables in which the vendor remains the owner of property until price is paid. Barber Asphalt Pav. Co. v. St. Louis Cypress Co., 46 So. 193, 121 La. 152 (1908); Security Ctr. Protection Servs., Inc. v. All-Pro Sec., Inc., 97-1070 (La.App. 4 Cir. 11/26/97); 703 So.2d 806; Guste v. Hibernia Nat. Bank in New Orleans, 94-0264 (La.App. 4 Cir. 5/16/95); 655 So.2d 724; writ denied, 95-1503 (La.9/29/95); 660 So.2d 852; Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La.App. 1 Cir. 3/11/94); 634 So.2d 466, writ denied, 94-0906 (La.6/17/94); 638 So.2d 1094. With reference to such conditional sales, our supreme court has stated:
Even if we were to assume, for the purposes of argument, that the agreement was in fact a conditional sale, under Louisiana law it would nevertheless be treated as a credit sale in which the ownership of the object of the sale passes at the time the contract is entered into. In re Wallace Lincoln-Mercury, [Co.,] Inc., 469 F.2d 396 (5th Cir. 1972); Roy O. Martin Lumber Co. v. Sinclair, 220 La. 226, 56 So.2d 240 (1951); Givens v. Southern Farm Bureau Casualty Insurance Co., 197 So.2d 380 (La.App. 2d Cir.1967); writs refused, 250 La. 902, 199 So.2d 916 (1967); Claude Neon Federal Co. v. Angell, 153 So. 581 (La.App. 2d Cir.1934).
The law in this area was precisely and succinctly articulated in In re: Wallace Lincoln-Mercury, Inc., supra, at 402:
[U]nder Louisiana law, a conditional sale whereby title is retained in the vendor is legally impossible, so the courts respect the contract but ignore the provision retaining title in the vendor. Morelock v. Morgan & Bird Gravel Co., 174 La. 658, 677, 141 So. 368, 374 (1932). By operation of law of Louisiana title passes to the purchaser but the vendor retains the vendor's privilege provided by Louisiana Civil Code Article 3227. Tangipahoa Bank & Trust Co. v. Kent, 5 Cir. 1934, 70 F.2d 139, 141; Christina Inv. Corp. v. Gulf Ice Co., 55 So.2d 685, 687 (1st Cir.La.App.1951). 469 F.2d 396, 402.
Therefore, even if we were to find that the parties had attempted to contract a conditional sale, the retention of title provision would be disregarded and the contract would be interpreted as passing *1191 title to the vendee at the time the contract was entered, and the vendor would be held to have retained only a security interest in the property.
Succession of Dunham, 408 So.2d 888, 896-897(La.1981).
Based on this line of jurisprudence, State Farm argues that the lease purchase agreement at issue here actually constituted a completed sale such that ownership passed to Ms. Hewitt upon the execution of this agreement and its policy provided no insurance coverage.
State Farm points to several cases involving instances where the courts have found completed sales such that insurance coverage under the applicable policy was no longer provided. Each of these cases is distinguishable from the instant case.
First, State Farm cites Luke v. Theriot, 195 So.2d 685 (La.App. 1 Cir.1967). In Luke, Donald Munson and his insurer, Lumbermens Mutual Casualty Company (Lumbermens) were sued by the plaintiff. Id. The plaintiff alleged that the automobile which had been driven by John Theriot at the time of the accident was owned by Mr. Munson and that Mr. Theriot had been using it with his permission and consent. Id. As a permissive user, the plaintiff urged that Mr. Theriot would have been covered under the Lumbermens insurance policy. Id.
As in the instant case, the issue of coverage hinged on whether ownership had been transferred from Mr. Munson to Mr. Theriot. Id. Mr. Munson and Mr. Theriot had entered an agreement by which Mr. Munson would swap his 1959 Mercury sedan, on which he had a chattel mortgage, for Mr. Theriot's vehicle and a certain sum of money. Id. On January 5, 1963, the two swapped cars; however, at that time, Mr. Theriot did not have the funds to pay Mr. Munson the additional money he owed for the transaction. Id. As a result, Mr. Theriot executed a promissory note for the amount he owed Munson and also executed a "securing act of chattel mortgage on the Mercury." Id. at 689. Unfortunately, the formal title transfer under the certificate of title law could not be completed at that time because Mr. Munson had an outstanding chattel mortgage on his vehicle. Id. Between January 5, 1963 and April 20, 1963, the date of the accident, Mr. Theriot made three monthly payments on the promissory note secured by the chattel mortgage he executed on the Mercury. Id. On August 23, 1963, after Mr. Munson had removed the chattel mortgage from the Mercury, he executed the documents necessary to complete the formal transfer of record title to Mr. Theriot. Id. In reaching the issue of ownership at the time of the accident, the first circuit concluded that the Mercury was owned by Mr. Theriot. Id. The court reasoned that the requirements of sale had been fulfilled as there had been an agreement at the time of the swap as to the thing and the price. Id. Therefore, the first circuit found that Lumbermens insurance policy did not cover the accident which took place on April 20, 1963, because ownership of the vehicle had already passed.
Obviously, Luke is distinguishable from the instant case. The parties in Luke did not enter into a transaction resembling a lease purchase or conditional sales transaction; the parties in Luke viewed the transaction as a sale. The only basis for arguing that ownership had not transferred in Luke was that the paperwork to transfer official title had not yet been completed at the time of the accident. In the instant case, the issue goes to the heart of the transaction; whether the parties intended to enter into a contract to sell, a conditional sale, or a completed sale.
Second, State Farm cites Scott v. Continental Ins. Co., 259 So.2d 391, 393-394 *1192 (La.App. 2 Cir.1972). In that case, as in Luke, the issue of ownership hinged on whether ownership of the vehicle could be transferred if the parties had not complied with the laws regarding the transfer of motor vehicle titles. The automobile in question was initially owed by L.C. Evans. Id. Mr. Evans was insured by Continental under a policy extending coverage from March 5, 1969 to March 5, 1970. Id. During August 1969, Mr. Evans sold the automobile to Rickey J. Deese for $350, payable in weekly installments of $50. Evans delivered the automobile to Deese at the time of sale. Id. Evans did not issue formal title to Deese. Id. At the time of the accident, Deese still owed $100 of the purchase price to Evans. Id. Both parties testified at trial as to "the reality of the sale and the delivery of the car." Id. at 393.
The second circuit found the agreement between Mr. Evans and Deese to be a completed sale. In doing so, the second circuit stated:
`The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.'
. . . .
The registration of motor vehicles under the Vehicle Certificate of Title Law is an administrative proceeding which does not bear any essential relationship to contract of sale of motor vehicles. Transportation Equipment Co. v. Dabdoub, 69 So.2[d] 640 (La.App. Orl.1954 writs denied). Consequently, failure to comply with the administrative regulations prescribed by the statute with respect to the sale of motor vehicles does not invalidate sales consummated under the aforesaid codal provisions. Hamner v. Domingue, 82 So.2d 105 (La. App. 1st Cir.1955).
Id. at 393-394. Again, as in Luke, the parties in Scott intended their transaction to be a completed sale such that it transferred ownership. Once again, the issue in the case was not whether they had intended to transfer ownership of the automobile, but whether compliance with the vehicle registration laws was necessary before the sale passed. These cases simply do not speak to the issue at hand in the instant case: whether the parties to the lease purchase agreement intended it to be a completed sales transaction.
Third, State Farm points to the case of Maloney v. State Farm Ins. Co., 583 So.2d 12 (La.App. 4 Cir.), writs denied, 586 So.2d 544 (La.1991) and 589 So.2d 1058 (La. 1991). At issue in that case was whether John C. Dodt was covered by his mother's State Farm policy at the time of his accident. Id. John C. Dodt was a named insured under a policy of insurance, which covered his mom's 1971 Plymouth. Id. Under that policy, uninsured motorist coverage did not apply if Mr. Dodt was occupying a car owned by him. Id.
At trial, Mr. Dodt testified that he had an informal agreement with his sister to purchase the 1971 Dodge Charger he was driving at the time of the accident. Id. The agreement was that he would pay a price of $1,000 at the rate of $100 a month to his sister in exchange for the vehicle. Id. Both Mr. Dodt and his sister testified that full payment was made three months prior to the accident; however, his sister had not transferred the registration and no bill of sale had been executed. Id. In addition, his sister testified that Mr. Dodt did not have unrestricted use of the automobile because she and her husband continued to use the car. Id. Although such use was unlikely because Mr. Dodt *1193 was living in New Orleans and his sister and her husband were living in Shreveport. Id. Finally, his sister and her husband maintained insurance on the vehicle. Id.
The fourth circuit concluded that the transaction between Mr. Dodt and his sister constituted a completed sale. Id. The court noted that motor vehicle sales are governed by the Louisiana Civil Code articles on sales, not the laws regarding motor vehicle certificates. Id. In evaluating the civil code provisions, the court indicated that, "[t]he sale is considered to be perfected between the parties, and the property is of right acquired by the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof ..." Id. at 15; See La. Civ.Code art. 2456.
The decision in the Maloney case at the trial level hinged on the fact that no certificate of registration or title had been issued to Mr. Dodt. Id. On appeal, the fourth circuit found that ownership had indeed passed when the court examined the sales rules in the civil code. Id. The evidence presented in the Maloney case showed that the parties had intended the transaction to be a buy-sell agreement, and that Mr. Dodt had paid the entire purchase price of the automobile prior to the accident. Id. The transaction in that instance, unlike the one in the present case, was not one contemplated by the parties to be a conditional sale. Id. Although the sales transaction was an informal one, as testified to by Mr. Dodt, it was still intended to be a sales transaction. Id.
Finally, State Farm cites Johnson v. White, 29,585 (La.App. 2 Cir. 5/7/97); 693 So.2d 1223. In that case, the plaintiff, Mr. Johnson, and the defendant, Mr. White, were involved in a car accident on January 26, 1995. Id. Mr. White claimed he had purchased and obtained possession of the vehicle from Ms. Williams prior to the accident, but that Ms. Williams had retained title to the vehicle until some time after the accident. Id. Mr. White also stated that he paid insurance on the vehicle in Ms. Williams name. Id. Safeway, the insurer, denied coverage, asserting that Mr. White was a non-permissive user of the vehicle. Id.
In determining coverage, the trial court stated:
Either expressly or tacitly the Court is persuaded from the totality of the evidence that Ms. Williams relied upon her then boyfriend to not only see that the car was repaired or handle the insurance, but also to arrange the selling of this automobile. And apparently all of that was done with Ms. Williams' knowledge and consent.
And when I say knowledge, I don't mean active knowledge that she knew the exact date, when, where or what, but she knew that the car was going to be repaired at some point. She knew Mr. Robinson had access to the car, she gave him access to the car. And ultimately she knew that the car was sold to Mr. White.
Given all these facts, the Court simply is saying that at the time of the accident, January 26, 1995, the automobile was owned by Ms. Williams, she authorized and gave Mr. White permission to use the car through her friend or agent, either expressly or tacitly, and I'm speaking about Mr. Robinson. So at the time that Mr. White had the automobile, he had it with the proper authorization and permission and consent to use.
Id. at 1224. On appeal, the second circuit reversed, stating:
[T]he Safeway policy in this case required that the insured, Ms. Williams, have ownership of the 1981 Lincoln in *1194 order to permit the vehicle's use by another. Acceptance of Mr. White's statements regarding Robinson's actions with the vehicle prior to the accident therefore demonstrates that Ms. Williams' ownership of the vehicle and coverage under the policy had ended.
In summary, relying upon Ms. Williams' testimony alone, there is insufficient evidence to support the trial court's conclusion that M.L. Robinson acted as Ms. Williams' agent and gave permission to Mr. White to drive Ms. Williams' vehicle on the day of the accident. If Mr. White's testimony is given any weight to support the view that Robinson dealt with the vehicle on Ms. Williams' behalf before the accident, that testimony indicates that the vehicle had been sold to Mr. White. Under either view of the conflicting testimony, there is no coverage which provides for Mr. White's negligent operation of the vehicle.
Id. at 1226.
As is evidenced by the discussion above, the appellate court concluded that Mr. White was not covered under Ms. Williams' insurance policy under either view of the conflicting testimony presented at trial. Id. The court concluded that either the sale had been completed such that ownership had been transferred to Mr. White which made coverage under the Safeway policy no longer applicable; or the testimony at trial was insufficient to show an agency agreement existed between Ms. White and Mr. Robinson such that Mr. White was a permissive driver of Ms. Williams' vehicle at the time of the accident such that coverage applied. Id.
Again, we find this case distinguishable from the case at hand. Once again, the case cited by State Farm does not involve a lease purchase agreement as in the instant case. Additionally, the reasoning in Johnson does not lend anything new to the analysis that the three cases previously cited have not already provided. Id. The court in Johnson looked to the civil code articles for instruction as to whether a completed sale had been passed by the parties. Id. On the issue of agency, the court did not conduct a detailed analysis of whether coverage under the policy would apply because it found the evidence produced insufficient to establish an agency relationship. Id.
Simply put, I do not find the cases cited by State Farm to apply in the instant case. Instead, I would look to the Louisiana Lease of Movables Act for guidance as to whether the lease purchase agreement entered into by the instant parties transferred ownership. The Louisiana Lease of Movables Act, located at La.R.S. 9:3301 et. seq., provides in pertinent part:
It is declared to be the policy of this state to encourage and foster the leasing of movable property to individuals and businesses, thus promoting economic growth and development. To this end, financed leases, which have previously been construed as conditional sales transactions, are hereby recognized as enforceable in this state.[1]
(Emphasis added.) La.R.S. 9:3302. The scope of this act extends to all leases of movable property within the state. La. R.S. 9:3303(A)[2]. Movable property is defined *1195 as corporeal movables as provided under La.Civ.Code art. 471. La.R.S. 9:3306(19). "Corporeal movables are things, whether animate or inanimate, that normally move or can be moved from one place to another." La.Civ.Code art. 471. At least one case, Blackledge v. Vinet, 543 So.2d 935 (La.App. 5 Cir.1989), has acknowledged that the Louisiana Lease of Movables Act has altered the law such that conditional sales agreements are now valid and enforceable.
Under this act, the lessor under a properly perfected financed lease retains full legal and equitable title and ownership to the leased equipment until the lessee exercises his option or complies with his obligation to purchase the leased equipment from the lessor as provided for under the lease agreement. La.R.S. 9:3310(B).[3] A lease, such as the one at issue in the instant case, which was entered into on or after the effective date of Chapter 9 of the Louisiana Commercial Laws is a financed lease if it is one that satisfies the criteria of a lease intended as a security interest under La.R.S. 10:1-201(37). La.R.S. 9:3306(12)(b). La.R.S. 10:1-201(37) provides in pertinent part:
Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and
(a) the original term of the lease is equal to or greater than the remaining economic life of the goods;
(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or
(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
Accordingly, a review of the lease purchase agreement in the instant case shows that it complies with the requirements of La.R.S. 10:1-201(37) such that it created a security interest. It is evident from the language of the lease purchase agreement that the consideration Ms. Hewitt was to pay Ms. Lemoine for the right to possession and use of the vehicle was an obligation for the term of the lease not subject to termination by Ms. Hewitt. Additionally, the original term of the lease purchase agreement was equal to or greater than the remaining economic life of the truck which she sought to purchase. Thus, I would find that the lease purchase agreement in the instant case was meant by the parties to be a conditional sale, and it did not transfer ownership upon the execution of the agreement. Because I would find that ownership did not transfer to Ms. Hewitt at the time the lease purchase agreement was entered into, I would find that the trial court did not err in finding that Ms. Lemoine's State Farm insurance *1196 policy covered the accident in the instant case.
Finally, the majority asserts that had "Ms. Bordelon retained title and ownership to the Isuzu, State Farm's policy would still afford no liability coverage for the accident because it specifically states that it provides no coverage for an insured vehicle rented or leased to another." I firmly disagree. State Farm's policy clearly provides that the 1997 Isuzu Hombre pickup truck is a covered automobile. Additionally, while the policy contains some ambiguous language which purports to exclude coverage for those vehicles "rented" or "leased" to a third party, the policy simply does not consider a situation such as the one presented in the instant case. Insurance policies are to be construed in favor of coverage and against the insurer who prepared the policy. Aucoin v. ABC Ins. Co., 00-337 (La.App. 3 Cir. 10/11/00); 773 So.2d 166, writ denied, 00-3490 (La.2/9/01); 785 So.2d 828, writ denied, 01-21 (La.2/9/01); 785 So.2d 831. Accordingly, I would have construed the policy in favor of coverage and would have affirmed the decision of the trial court but on different grounds.
NOTES
[1] The trial court's oral reasons for judgment established the total award as $9,132.90. However, the written judgment executed by the trial court sets the award at $9,130.90. Because we reverse the judgment, the discrepancy does not affect this opinion.
[1] A conditional sale is defined as "a legal arrangement under which a seller sells goods or movable property to a purchaser on a deferred payment or credit basis, with the seller retaining legal title and ownership of the property until such time as the purchase price is paid in full." La.R.S. 9:3306(7).
[2] Things excluded under the act are enumerated under La.R.S. 9:3304. Motor vehicles are not specifically excluded. Compare La. R.S. 9:3303(B)(4) part of the Louisiana Rental Purchase Agreement Act which specifically states that the act does not apply to the "lease of an automobile, van, or truck of less than one ton."
[3] Equipment is defined as "movable property."